LAWSON, J.
 

 Orange County Sheriff Jerry Demings (“Sheriff’) and Deputy Steven Jenny (“Jenny”) appeal from an amended final summary judgment in favor of Orange County (“County”) and the Orange County Citizen’s Review Board (“CRB”). In that order, the trial court upheld sections of the Orange County charter and ordinances establishing the CRB and authorizing it to review and investigate citizen complaints of excessive force and abuse of power. Particularly at issue is the CRB’s power to compel the Sheriffs deputies to appear and testify in CRB investigations by subpoena. We agree with Sheriff Demings and Jenny that the county charter and ordinance provisions creating the CRB and authorizing it to investigate citizen com
 
 *606
 
 plaints against the Sheriffs deputies are unconstitutional, and reverse the order on appeal.
 

 Jurisdiction and Standard of Review
 

 Jurisdiction exists under Florida Rule of Appellate Procedure 9.030(b)(1)(A). The issues were preserved below, and the
 
 de novo
 
 standard of review applies.
 
 [1]
 

 Background and Relevant Facts
 

 Under Florida’s Constitution, the state is divided into political subdivisions called counties, Article VIII, Section 1(a), Florida Constitution, so that much of the state’s “police power” can be controlled and exercised at the community level.
 
 [2]
 
 Generally, the constitution provides for non-charter counties, which are permitted to exercise only those powers expressly authorized by the Legislature through general or special laws, Article VIII, Section 1(f), Florida Constitution, and charter counties, which are broadly granted “all powers of local self-government” not inconsistent with general or special law. Art. VIII, § 1(g), Fla. Const. Additionally, under Florida’s constitution, certain responsibilities of local governance are separately entrusted to independent constitutional officers who, at least in non-charter counties, are not accountable to the county’s governing board, but derive their power directly from the state. Art. VIII, § 1(d), Fla. Const. These officers are independently accountable to the electorate unless otherwise provided by law.
 
 Id.
 

 In charter counties, the electorate has an option of either maintaining these independent constitutional offices or abolishing them and transferring their responsibilities to the board of the charter county or to local offices created by the charter.
 
 Id.
 
 However, the constitution does not allow for the piecemeal transfer of responsibilities from an independent constitutional officer.
 
 Id.; Cook v. City of Jacksonville,
 
 823 So.2d 86 (Fla.2002);
 
 Dade County v. Kelly,
 
 99 So.2d 856 (Fla.1958). Therefore, if the electorate wants to transfer any responsibility from a constitutional officer to the county’s governing board, it can do so only by abolishing the constitutional office altogether.
 
 Id.
 

 On November 4, 1986, a majority of Orange County’s electorate approved a charter form of government for the County, which left the independent constitutional office of sheriff intact.
 

 On November 3, 1992, a majority of the County’s voters then approved a charter amendment abolishing the constitutional office of sheriff and creating a sheriffs department headed by a county charter office of sheriff. At the same time, the electorate added a charter provision creating the CRB to investigate citizen complaints against the deputies working in the new county department, and to review the sheriffs internal departmental investigations into those complaints. Art. VIII, § 801, Orange County Charter. The charter provides for a CRB composed of seven to eleven members, and requires the sher
 
 *607
 
 iff to appoint two of the members. The remaining members are appointed by the board of county commissioners. To aid the CRB in “conducting [its] investigations,” the charter grants it the power to “subpoena witnesses, administer oaths, take testimony and require production of evidence.”
 
 Id.
 
 By ordinance, the board has set the number of CRB members at nine, and confirmed the CRB’s “duty” to “review citizen complaints ... regarding the alleged use of excessive force or abuse of power by any officer or employee of the office of sheriff.” Ch. 2, Art. V, Div. 6, §§ 2-193, 2-196, Orange County Code.
 

 On November 5, 1996, a majority of the County’s voters approved a charter amendment abolishing the charter office of sheriff, re-establishing the Sheriff as an independent constitutional officer, but leaving the CRB intact. This structure still exists, as it did when the events arose which relate to deputy Jenny, on May 7, 2004. On that day, Jenny was on duty, assigned to the Sheriff’s Juvenile Arrest and Monitor Unit. He was investigating a complaint that J.M., a seventeen-year-old juvenile male on probation for aggravated assault with a deadly weapon, was in violation of his court-ordered curfew. Jenny ultimately arrested J.M. for the curfew violation, and J.M. later filed a complaint alleging that Jenny had used excessive force during the arrest. The Sheriffs Professional Standards Division investigated the complaint and determined that J.M.’s complaint was meritless.
 

 After completion of the Sheriff’s internal investigation, the CRB initiated its own independent investigation, issuing a subpoena to Jenny and ordering him to appear before the CRB for questioning by the entire board. Jenny contested the validity of the subpoena, filing a petition for emergency writ of prohibition or alternative petition for writ of certiorari and contending that the CRB lacked the power to subpoena him as a matter of law. This petition was rejected on procedural grounds, and the CRB served Jenny with a second subpoena. Jenny’s counsel then appeared at the CRB hearing, again objecting to issuance of the subpoena and refusing to subject Jenny to questioning by the CRB. In response, the CRB filed an action in circuit court seeking to enforce its subpoena.
 

 Independently, the Sheriff filed a complaint for declaratory judgment and supplemental relief, also challenging the CRB’s authority to independently investigate J.M.’s complaint against Jenny. The two cases were consolidated, and decided on summary judgment in the order on appeal, which held that the CRB was authorized to independently investigate J.M.’s complaint against Jenny. This appeal followed.
 

 Relevant Statutes
 

 Pursuant to the Orange County Career Service Act, chapter 89-507, Laws of Florida, the Sheriff possesses the authority to receive, investigate, and dispose of complaints against his personnel. Section 30.53, Florida Statutes, also preserves the Sheriff’s independence in selecting, retaining, or firing personnel and setting salaries. Finally, section 112.533 requires the Sheriff to establish and operate a system for receiving and investigating complaints against his deputies that fully complies with the procedures set forth in section 112.532, Florida Statutes. These latter statutes, together with the other provisions in part VI of chapter 112, are commonly referred to as the Law Enforcement Officer Bill of Rights.
 
 Hinn v. Beary,
 
 701 So.2d 579, 580 (Fla. 5th DCA 1997).
 

 Enacted in 1974, section 112.533 was amended in chapter 2003-149, Laws of Florida, which explains in the title that the procedure set forth in these statutes
 
 *608
 
 “shall be the-
 
 exclusive procedure
 
 used by law enforcement and correctional agencies for investigation of complaints against law enforcement ... officers.”
 
 Id.
 
 (emphasis added). The amendment clarified that a law enforcement agency’s internal investigation “shall be
 
 the
 
 procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges,
 
 uotivithstanding any other laiv or ordinance to the
 
 contrary.”
 
 [3]
 
 § 112.533(1)(a), Fla. Stat. (2008) (emphasis added).
 

 In 2007, the statute was further amended to require “[a]ny political subdivision that initiates or receives a complaint against a law enforcement officer or correctional officer” to “forward the complaint to the employing agency of the officer who is the subject of the complaint for review or investigation” within five business days of initiating or receiving the complaint. Ch. 2007-110, Laws of Fla.; § 112.533(l)(b)l., Fla. Stat. (2008). “Political subdivision” is expressly defined to include counties and any board, commission or other “agency or unit of local government created or established by law or ordinance” by a local government. § 112.533(l)(b)2., Fla. Stat. (2008).
 

 Legal Analysis
 

 A.
 
 Plain Meaning of Section 112.533, Florida Statutes.
 

 “[I]n construing a statute, the courts must ‘look first to the statute’s plain meaning.’ ”
 
 Hennis v. City Tropics Bistro, Inc.,
 
 1 So.3d 1152, 1156 (Fla. 5th DCA 2009) (quoting
 
 Moonlit Waters Apartments, Inc. v. Cauley,
 
 666 So.2d 898, 900 (Fla.1996)). As explained in
 
 State v. Mason,
 
 979 So.2d 301, 303 (Fla. 5th DCA 2008):
 

 The courts’ job in construing a statute is to give effect to the Legislature’s intent.
 
 State v. J.M., 824
 
 So.2d 105, 109 (Fla.2002). To determine legislative intent, courts look first to the plain language of the statute.
 
 Joshua v. City of Gainesville,
 
 768 So.2d 432, 435 (Fla.2000).
 

 Section 112.533, as amended in 2003 and 2007, is unambiguous. It conveys a clear and definite directive that when a complaint is registered against a law enforcement officer, the employing agency is the only local governmental entity authorized to investigate that complaint.
 
 [4]
 
 This
 
 *609
 
 is clear from: (1) the title language of chapter 2003-149, designating the investigation required by chapter 112 as the “exclusive procedure” for investigation; (2) the language added to section 112.533 in 2003, mandating that the investigation authorized by chapter 112 “shall be
 
 the
 
 procedure” for investigating complaints against local law enforcement “notwithstanding any other law or ordinance to the contrary;” and (3) the language added to section 112.533 in 2007, directing any local governmental entity that receives or initiates a complaint against a local law enforcement officer to forward it to the employing agency for investigation in accordance with chapter 112.
 

 B.
 
 Constitutional Limitation on the County’s Authority.
 

 As previously noted, as a charter county, Orange County is constitutionally granted “all powers of local self government not inconsistent with general law,” and may only enact ordinances “not inconsistent with general law.” Art. VIII, Section 1(g), Fla. Const. The County is also prohibited from transferring any of the Sheriffs powers or duties to another county office, department or board, without abolishing the constitutional office of sheriff by charter. Art. VIII, § 1(d), Fla. Const.;
 
 Kelly,
 
 99 So.2d at 858-59.
 

 Based on these constitutional provisions, the question presented is whether the County charter and ordinance creating and authorizing an independent board to review citizen complaints against the Sheriffs deputies, without first abolishing the constitutional office of sheriff, is “inconsistent” with general law.
 
 [5]
 
 The answer seems clear to us in light of the plain language of section 112.533, Florida Statutes. Because section 112.533 limits the investigation of complaints against law enforcement officers by local government to the employing agency’s investigation, the charter provisions and ordinance that establish an additional procedure for investigating these complaints necessarily and directly conflict with the statute.
 
 [6]
 

 We note that the Attorney General has reached a similar conclusion. In an informal opinion of the Attorney General of • Florida, dated March 22, 2004, the city attorney for Key West asked whether the city could create a board with the authority to “receive, investigate and make recommendations regarding complaints of police officer misconduct independent of the internal affairs procedures established by the [police department] pursuant to section 112.533(1), Florida Statutes.” Beginning with the presumption that such ordinances and charters were valid, the Attorney General concluded that the statute provided the “exclusive means to investigate complaints against law enforcement officers” and the Legislature’s prescription of such procedure effectively prohibited investigations from being done in any other manner. He also concluded that there did “not appear to be any provision for a citizens complaint review board to utilize the investigative procedures contained in Part VI, Chapter 112” or to “operate as the receiving entity for complaints against law enforcement officers” under that statute.
 
 *610
 
 Subsequently, in Opinion of the Attorney General of Florida 2006-35 (2006), the Attorney General reached the same conclusion in a formal opinion, finding that the Miami-Dade Police Department was the “exclusive” agency responsible for receiving, investigating and determining complaints against its officers pursuant to section 112.533. Although the County cites to two older opinions of the Attorney General,
 
 [7]
 
 they both predate the 2003 and 2007 amendments to section 112.533, and can therefore offer no insight on a county’s authority under current law.
 

 We have also considered the County’s citation to
 
 Timoney v. City of Miami Civilian Investigative Panel,
 
 990 So.2d 614 (Fla. 3d DCA 2008), and find that case equally unhelpful.
 
 Timoney
 
 dealt with a city police chief, a law enforcement officer expressly exempted from the chapter 112 investigation.
 
 See
 
 § 112.531(1), Fla. Stat. (2008). Accordingly, from our reading of
 
 Timoney,
 
 it seems clear that the local board’s authority to investigate a complaint in light of section 112.533 was never raised as an issue in that case. In fact, section 112.533 is neither cited nor discussed in Timoney.
 
 [8]
 

 Finally, we note that the CRB’s argument in defense of its authority merits no serious analysis. The CRB’s argument is simply that it does not investigate complaints against the Sheriffs deputies. This argument completely ignores the record before us, as well as the CRB’s own organic documents. Article VIII, section 801A, Orange County Charter, expressly charges the CRB with
 
 “reviewing citizen complaints
 
 and departmental investigations thereof
 
 regarding the use of force or abuse of power by any officer or employee of the office of sheriff.”
 
 (Emphasis added). And, section 801B grants the CRB with subpoena and other powers for the express “purpose of conducting investigations pursuant to this section.... ”
 

 C.
 
 Other Problems with the CRB Charter Provision and Implementing Ordinances.
 

 As an independent constitutional officer, the Sheriff does not derive his authority from the County’s charter or the board of county commissioners, and is neither generally accountable to the Board for his conduct in office nor subject to the board’s direction in the fulfillment of his duties. Art. VIII, § 1(d), Fla. Const. In the event of misconduct or misfeasance by the Sheriff, it is Florida’s governor who is authorized to suspend the Sheriff from office — and not the County’s governing board. Art. IV, § 7(a), Fla. Const.
 
 [9]
 
 And, ultimately, the Sheriff is independently accountable to the electorate of Orange County. Art. VIII, § 1(d), Fla. Const.;
 
 State v. Sheats,
 
 78 Fla. 583, 83 So. 508 (1919) (explaining that the term “office” as used in the Florida Constitution “implies a delegation of a portion of the sovereign power to, and the possession of it by, the
 
 *611
 
 person filling the office” or “independent authority of a governmental nature”). Given this constitutional framework, we also find that the County cannot interfere with the Sheriffs independent exercise of his duty to investigate misconduct by his deputies either by forcing him to appoint members to the CRB or by mandating his participation in CRB proceedings, either in person or through his deputies or employees. Therefore, we agree with the Sheriff that the basic structure or composition of the CRB is constitutionally infirm, and with Jenny that those provisions of the charter and ordinance authorizing the CRB to compel the attendance of Sheriffs employees to appear for questioning by the CRB, or to produce documents, are also unconstitutional.
 

 D.
 
 Doctrine of Severance and Relief Required.
 

 “Severability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions.”
 
 Ray v. Mortham,
 
 742 So.2d 1276, 1280 (Fla.1999). In this case, we have carefully considered the four-part test applied to determine whether portions of a statute or ordinance that have been declared unconstitutional may be severed from the rest.
 
 See Cramp v. Bd. of Pub. Instruction of Orange County,
 
 137 So.2d 828, 830 (Fla.1962). Given the number of significant constitutional infirmities with the charter provision creating the CRB, and the ordinance implementing that provision, we simply see no practical way to sever out any part of the provision — and therefore declare article VIII, section 801 of the Orange County Charter, along with the ordinance implementing this charter provision, to be void as violative of article VIII, sections (l)(d) and (l)(g) of the Florida Constitution.
 

 Our conclusion that no part of the charter provision at issue can be salvaged is also influenced by the fact that article VIII, section 801 was added to the charter in tandem with the charter amendment abolishing the constitutional office of sheriff and creating a department of sheriff as part of the charter government. As previously discussed, that department was subsequently abolished by the voters of Orange County when they restored the constitutional office of Sheriff. Therefore, the department referred to in article VIII, section 801 — whose investigations the CRB is authorized to review — no longer exists. However, we note that we see no reason why a county cannot comment upon a sheriffs exercise of any constitutional duty affecting the county’s citizens, either through its board or with input from an independent board or commission. Nor do we see any constitutional impediment that would prohibit a county board from reviewing public records or considering testimony from anyone volunteering to appear and discuss issues related to the discharge of any responsibility entrusted to a constitutional sheriff by law. Therefore, in theory, we see no reason why the County could not create a board with more limited power to review and comment upon internal investigations conducted by the Sheriff. But, we will not speculate, in a vacuum, about how such a board might work, or the extent of the powers it could be granted without unconstitutionally interfering with the Sheriffs independent authority. In this case, it suffices to say that the charter provision before us so far exceeds the scope of that allowed by current law that it cannot stand.
 

 Conclusion
 

 For the reasons set forth above, we reverse the order on appeal and remand
 
 *612
 
 for entry of judgment consistent with this opinion.
 

 REVERSED.
 

 GRIFFIN and EVANDER, JJ., concur.
 

 [1]
 

 . The
 
 de novo
 
 standard of review applies to a trial court's decision to grant or deny final summary judgment,
 
 Major League Baseball v. Morsani,
 
 790 So.2d 1071, 1074 (Fla.2001), as well as its ruling on the constitutionality of a county charter or ordinance.
 
 Cf. City of Hollywood v. Mulligan,
 
 934 So.2d 1238 (Fla.2006) (applying
 
 de novo
 
 standard of review to lower court's determination of validity of city ordinance).
 

 [2]
 

 .
 
 See also City of Miami v. Lewis,
 
 104 So.2d 70, 72 (Fla. 3d DCA 1958) ("counties derive their status as political subdivisions of the state through constitutional designation whereas the cities or municipalities are creatures of the statutes");
 
 City of Miami v. Rosen,
 
 151 Fla. 677, 10 So.2d 307, 309 (1942) ("Municipalities in Florida are not subdivisions of the state as are counties.").
 

 [3]
 

 . The statute does, however, provide an express exception authorizing investigation by the Criminal Justice Standards and Training Commission. § 112.533(l)(a), Fla. Stat.
 
 (2008).
 
 In addition, the Florida Police Benevolent Association notes that allegations of excessive force and abuse or power against Florida law enforcement officers are subject to possible investigation by the state attorney's office, state grand jury, slate criminal courts, Florida Department of Law Enforcement, Criminal Justice Standards and Training Commission, Federal Bureau of Investigations, United States Department of Justice, federal grand jury and federal criminal courts.
 

 [4]
 

 . The statute also requires that this investigation afford each officer the protections mandated by the Law Enforcement Officer's Bill of Rights. These include the rights to: (1) have the interrogation conducted at a reasonable hour, for a reasonable time, at the officer's place of employment; (2) be informed of all persons present, all complainants and the nature of the investigation; (3) be interrogated by one person; (4) review witness statements; have the entire interrogation taped; (5) be informed of constitutional rights; and (6) have an attorney or other representative present at all times whenever the interrogation relates to the officer's continued fitness for law enforcement.
 
 See §
 
 112.532(1 )(a)-(j), Fla. Stat. (2008). Section 112.532 further provides an officer with the right to bring civil suit against complainants for knowingly filing false complaints, and establishes a 180-day limitations period to complete investigations of complaints. §§ 112.532(3) and (6), Fla. Stat. (2008).
 

 [5]
 

 . County charters and ordinances may be inconsistent with general law in two ways. "First, a county cannot legislate in a field if the subject area has been preempted to the State.... Second, in a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance that directly conflicts with a state statute."
 
 Phantom of Brevard, Inc. v. Brevard County,
 
 3 So.3d 309, 314 (Fla.2008).
 

 [6]
 

 . Based on our finding that the charter and ordinance directly conflict with the plain language of section 112.533, we need not conduct a separate preemption analysis.
 

 [7]
 

 . Op. Att'y Gen. Fla. 74-41 (1974); Op. Att'y Gen. Fla. 97-62 (1997).
 

 [8]
 

 .
 
 Timoney
 
 does contain language suggesting that nothing in chapter 112 prohibits an "independent, external investigation” by a local governing board of a complaint against a law enforcement officer. If this was an intended conclusion in
 
 Timoney,
 
 we believe it to be in error — -as inconsistent with the plain language of section 112.533. Again, however, the argument based upon section 112.533 does not appear to have been made in
 
 Timoney.
 
 Additionally,
 
 Timoney
 
 did not involve die relationship between a local governmental body and an independent constitutional officer. Rather, that case involved a city's authority to investigate its own employee.
 

 [9]
 

 .The Senate is authorized to remove a suspended county officer from office. Art. IV, § 7(b), Fla. Const.