SHEPHERD, J.

ON MOTION FOR REHEARING AND CERTIFICATION

Appellant’s motion for rehearing and for certification are denied. On our own motion, however, we withdraw our previous opinion issued on January 23, 2013, and substitute the following corrected opinion ■for the original.
This is an appeal from a final judgment entered on cross motions for summary judgment. Appellants contend, as they argued below, that section 112.533(1), Florida Statutes (2007), provides the exclusive means to investigate allegations of police misconduct, and the City of Miami Ordinance creating a Civilian Investigative Panel (CIP) to oversee the sworn police department directly conflicts with the statute and therefore must fall. For the reasons set forth below, we disagree.
FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of a civilian complaint lodged with the CIP that alleged professional misconduct during a traffic stop conducted by City of Miami Police Lieutenant Freddy D’Agastino. After the City of Miami Police Department conclud *238 ed its investigation,[1] the CIP subpoenaed Lieutenant D’Agastino to testify before, its Complaint Committee regarding the allegations. In response, Lieutenant D’Agas-tino filed a petition in the trial court seeking to quash the subpoena and obtain a protective order against his having to testify. He alleged that section 112.533(1) granted the police department exclusive authority to .investigate allegations of police misconduct. Section 112.533(l)(a) provides: “Every law enforcement agency ... shall establish and put into operation a system for the ... investigation ... of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement ... officer .., notwithstanding any other law or ordinance to the contrary.” (emphasis added).
The City of Miami intervened, and was served separately with a declaratory action by the Fraternal Order of Police seeking to declare unconstitutional those ordinances empoweiing the CIP to investigate the City’s law enforcement- officers. The CIP, in turn, joined that action. The two cases- .ultimately were .consolidated and each party moved for summary judgment. The trial, court granted the motions filed by the City and the CIP, relying upon Timoney v. City of Miami Civilian Investigative Panel, 990 So.2d 614 (Fla. 3d DCA 2008). Appellants contend Timoney is distinguishable and that Demings v. Orange County Citizens Review Board, 15 So.3d 604 (Fla. 6th DCA 2009), controls.
SCOPE OF REVIEW
The City of Miami is a municipality located in Miami-Dade County. Miami-Dade County is a constitutionally authorized home rule county, created pursuant to an amendment to the Florida Constitution, adopted at the general election held on November 6, 1956. See Article VIII, § 6(e), Fla. Const. (1968), incorporating Article VIII, § 11, Fla. Const. (1885). Pursuant to this constitutional provision, Miami-Dade County is authorized to create, abolish or modify the boundaries of all municipal corporations, and provide the method by which each municipal corporation “shall have the power to make, amend or repeal its own charter,” Art. VIII, § 11(c), (g), Fla. Const. (1885), provided, however, that “Nothing in this section shall limitar restrict the power of the Legislature to enact general laws which shall relate to Dade County ... or to any municipality in Dade County.” Art. VIII, § 11(5), Fla. Const. (1885). This section of Article VIII of the Florida Constitution of 1885 further provides, “[N]or shall the charter of any municipality in Dade County conflict with this Constitution or any such applicable general law.” Id. The next section of Article VIII, section 11 of the 1885 Constitution repeats these admonitions. Art; VIII, § 11(6), Fla. Const. (1885). Finally, although .the chief purpose of Article VIII, section 11 of the 1885 Constitution was to authorize Miami-Dade County to adopt a home rule charter of its own, the legislature and electors of the state recognized that these admonitions would apply to municipal ordinances as well. See Article VIII, § 11(9), Fla. Const. 1885 (“[I]t is further declared to be the intent of the Legislature and of the electors of the State of Florida that the provisions Of this Constitution and general laws which shall relate to Dade County ... or to any municipality in Dade County ... enacted pursuant thereto by the Legislature shall be the supreme law in Dade *239 County, Florida.”). We accordingly restrict our review to a determination of whether the CIP investigation conflicts with general law.
ANALYSIS
In 2001, the City of Miami Charter was amended to include a mandate that the city commission create a civilian investigative panel, to oversee the sworn police department. City of Miami Charter, § 51. The following year, the commission approved an. ordinance creating the CIP in accordance with the Charter’s mandate. Its express purpose is to “[a],ct as independent civilian oversight of the sworn police department.” Miami, Fla,, Code art. II, § 11.5-27(1) (2002). In furtherance of this purpose, the CIP is authorized to “[c]on-duct investigations, inquiries and public hearings' to make factual determinations, [and] facilitate resolution and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn [police] officer.” Id. Particularly at issue is the CIP’s subpoena power, through which it can compel a sworn police officer or other witness to testify before it. Id. at § 11.5-32. Lieutenant D’Agastino contends the Police Officers’ Bill of Rights (PBR), set forth un-dér sections 112^532-533 of the Florida Statutes, provides the sole procedure for investigating police misconduct. To the extent the City charged the CIP with investigatory power, he argues it directly conflicts with the statute and is therefore expressly prohibited.
A side-by-side-. comparison of the two laws reveals the pertinent provisions to be as follows:
§ 112.533, Fla. Stat. (2007) Receipt and processing of complaints.—
(l)(a) Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received .by such agency from any person, which shall be the procedure for'investigating a complaint against a law enforcement and correctional officer and for ■ determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary.
[[Image here]]
(b)l. Any political subdivision-that initiates or receives a complaint against a law enforcement officer' or correctional' officer must within 6 business days forward the complaint to the employing agency of the officer who is the subject of the complaint for review or investigation.
2. For purposes of this paragraph, the term “political subdivision” means a separate agency or unit of local government created or established by law or ordinance and the officers thereof and includes, but is not limited to, an authority, board, branch, bureau, city, commission,, consolidated government, county, department, district, institution, metropolitan government, municipality, office, officer, public corporation, town, or village.
Art. II, § 11.5-27 Purposes, powers and duties.
The' purpose, powers and duties of the CIP are to:
(1) Act as independent civilian oversight of the sworp police department;
[[Image here]]
(5) Conduct investigations, inquiries and public hearings to make factual determinations, facilitate resolution and propose recommendations to the city manager-and police chief regarding allegations of misconduct by any sworn officer of the city police department;
[[Image here]]
(9) Make recommendations as to the disposition of alleged incidents of police misconduct, to which the police chief is required to respond within 30 days[.],
*240 A brief perusal of these provisions makes clear the PBR does not purport to expressly preempt other investigative bodies or means of oversight. Lieutenant D’Agastino concedes as much. Thus, we proceed to our next task, a determination whether the CIP “conflicts” with the PBR.
Conflict between legislative provisions is said to exist “if, in order to comply with one provision, a violation of the other is required.” Jordan Chapel Freewill Baptist Church v. Dade County, 334 So.2d 661, 664 (Fla. 3d DCA 1976). Some federal courts have further refined the inquiry to ask whether the local action ‘frustrates the purpose’ of a state statute. See e.g., Bravman v. Baxter Healthcare Corp., 842 F.Supp. 747, 753 (S.D.N.Y.1994); see also Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). One of our colleagues has urged the explicit recognition and use of this test in our state district courts of appeal, suggesting that it has been impliedly used in his court already. See Judge James R. Wolf and Sarah Harley Bolinder, “The Effectiveness of Home Rule: A Preemption and Conflict Analysis,” 83 Fla. Bar Jnl, 92, 93 (June 2009) (citing City of Jacksonville v. American Environmental Services, Inc., 699 So.2d 255 (Fla. 1st DCA 1997)). Other courts ask simply whether the provisions can “co-exist.” Phantom of Brevard, Inc. v. Brevard Cnty., 3 So.3d 309, 315 (Fla.2008) (“There is conflict between a local ordinance and a state statute when the local ordinance cannot coexist with the state statute.”). In reality, these so-called “tests” are just diagnostic tools available to assist our decision-making. Under all of them, our proper role is to harmonize and give full effect to both legislative prerogatives if we can. See City of Hollywood v. Mulligan, 934 So.2d 1238, 1244-45 (Fla.2006) (“When possible, ‘we must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.’ ”) (quoting Clines v. State, 912 So.2d 550, 557 (Fla.2005)). Mindful of this guidance and the limited scope of our review, we have little difficulty finding the provisions of the CIP and the PBR to be readily reconcilable.
The City Charter and the CIP’s enabling ordinance clearly establish the CIP acts independently of the police department and other city officials. City of Miami Charter § 51(E)(1); Miami, Fla., Code, art. II, § 11.5-27. Indeed, the CIP’s independence is central to its purpose, as expressed by its mandate: to provide “independent civilian oversight of the sworn police department.” City of Miami Charter § 51 (emphasis added).
The CIP is granted limited power to act in response to its investigations, and may only propose recommendations to the City Manager or Police Chief. City of Miami Charter § 51(E)(l)-(3); Miami, Fla., Code, art. II, § 11.5-27. The CIP has no management authority over City police officers. It cannot discipline, suspend, demote, discharge, or transfer city police officers. Management decisions as a result of police misconduct are reserved to city police administrators, in keeping with the structure of the PBR. Indeed, the CIP ordinance provides that “[pjoli-cies and procedures shall be established to ensure compliance with Chapters 112 and 119 of the Florida Statutes and any other applicable laws.” Miami, Fla., Code, art. II, § 11.5-33(e) (2002).
. Additionally, the City Charter provides the CIP “shall not interfere with any pending or potential criminal investigation or prosecution.” City of Miami Charter § 51(D). The CIP ordinance further dictates the CIP shall “[ejxercise its powers so as to not interfere with any ongoing *241 investigations and conduct its activities consistent with applicable law ... and labor contracts.” Miami, Fla., Code, art. II, § 11.5-27(2). To that end, the CIP is restricted from investigating a complaint until “after determination by its independent counsel, who shall be required to consult with the appropriate prosecutorial agencies, [so] that an investigation will not interfere with any pending criminal investigation.” Miami, Fla., Code, art. II, § 11.5-31(2)(a). Finally, the Ordinance provides that “[a] decision of the CIP to proceed with an investigation may be challenged by .any agency engaged in such investigation or prosecution by seeking judicial order, in law or equity in a court of competent jurisdiction,” and that “[w]rit-ten notification of such challenge to the CIP shall stay the investigation for 48 hours permitting the agency to obtain such a judicial order.” Id,
In contrast, the PBR creates a process for internal investigations by the police department to determine whether to proceed with disciplinary charges. To this end, section 112.532(1)'of the Flprida Statutes (2007), provides:
(1) RIGHTS OF LAW ENFORCEMENT OFFICERS AND CORRECTIONAL OFFICERS WHILE UNDER INVESTIGATION. — Whenever a law enforcement officer or correctional officer is under investigation and subject to interrogation by members of his or her agency for any reason that could lead to disciplinary action, suspension, demotion, or dismissal, the interrogation must be conducted under the following conditions....
(emphasis added). The rights provided under this provision are limited to instances of investigation and interrogation by members of the officer’s employing law enforcement agency. This , provision makes no reference to external citizen investigations, and therefore does not apply in that context.
Section 112.533(l)(a) provides:
Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary chárges, notwithstanding any other law or ordinance to the contrary.
(emphasis, added). The Appellants urge a reading of section 112.533(l)(a) that would vest law enforcement agencies with the exclusive authority to investigate any complaint against their sworn officers. The City, to the contrary, reads section 112.533(1) to apply only to employee discipline. It urges that section 112.533(1) does not preclude the formation of an independent and external citizens review panel, such as the CIP, to investigate alleged police misconduct and make proposed recommendations. We believe the City has the better argument. The absence of any authority granted to the CIP to make the sort of police management decisions addressed in Chapter 112, or to affect the obligations that chapter imposes on the Miami Police Department and its- investigators, makes manifest the absence of a conflict between the CIP ordinance and Chapter 112.
Appellants, Lieutenant D’Agastino and the Fraternal Order of Police urge us to follow the rationale outlined in Demings, supra. There, the Orange County Sheriff and one of his deputies challenged the authority of Orange County’s CIP equivalent, the Citizen’s Review Board (“CRB”), to subpoena deputies or otherwise investí- *242 gate civilian complaints of excessive use of force by the department’s sworn deputies. Noting the Orange County Sheriff is a constitutionally elected officer possessed of a portion of the sovereign power of the state, the Fifth District Court-of Appeal, in the decisive holding in the case, determined the Sheriff could not be required to account for his activities to a locally-created board. The court explained:
As an independent constitutional officer, the Sheriff does not derive his authority from the County’s charter or the board of county commissioners, and is neither generally accountable to the Board for his conduct in office nor subject to the board’s direction in the fulfillment of his duties. Art. VIII, § 1(d), Fla. Const. In the event of misconduct or misfeasance by the Sheriff, it is Florida’s governor who is authorized to suspend the Sheriff from office — and not the County’s governing board. Art. IV, § 7(a), Fla. Const. And, ultimately, the Sheriff is independently accountable to the electorate of Orange County. Art. VIII, § 1(d), Fla. Const.; State v. Sheats, 78 Fla. 583, 83 So. 508 (1919) (explaining that the term “office” as used in the Florida Constitution “implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office” or “independent authority of a governmental nature”). Given this constitutional framework, we [ ] find that the County cannot interfere with the Sheriffs independent exercise of his duty to investigate misconduct by his deputies either by forcing him to appoint members to the CRB or by mandating his participation in CRB proceedings, either in person or through his deputies or employees.
Demings, 15 So.3d at 610-11. Although the Fifth District Court of Appeal seemed to recognize' this was the dispositive issue in the case, see Id. at 609 (“[T]he question presented is-whether the County charter and ordinance creating and authorizing an independent board to review citizen complaints against Sheriffs deputies, without first abolishing the constitutional office of sheriff, is ‘inconsistent’ with general law.”),[2] the court also addressed whether the conduct of the board was “inconsistent” with section 112.533. Id.[3] We simply disagree with the judgment of the Fifth District Court of Appeal on this point. Rather, we prefer and remain quite comfortable with the observation made not so long ago by another panel of this court in Timoney, relating to the issue before us today, namely that . Chapter 112 “concerns internal investigations conducted by a *243 police department of its own officers” and the PBR “sets forth the procedures to be followed. by the police department for interrogation of a law enforcement officer under investigation by the police department[,]” Timoney, 990 So.2d at 618 (first emphasis added), while the CIP’s authority “extends to independent, external investigations.” Id. at 619 (emphasis added). Hence, following Timoney, we conclude the CIP provides a distinct function that is not prohibited by the rights and restrictions set forth under Chapter 112. To the extent this observation was non-dispositive in Timoney, we adopt it here in support of the rationale already provided for affir-mance.
We affirm the decision of the trial court.
WELLS, J., concurs.

. The Internal Affáirs department ultimately determined the allegations in the' complaint were "inconclusive.”

. Because Ora'nge County is a charter counly, it is authorized by Article VIII section 1(d) of the Florida Constitution to abolish the constitutionally elected office of sheriff by charter amendment or special law approved by a vote of the electors so long as all of the duties of the office are transferred to another office.

. ’ Orange County's "conflict” provision emanates from Article VIII, section 1(g) of the Florida Constitution, which states: "Counties operating under county charters shall have all powers of local Self-government hot inconsistent with general law:... The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law.” Id. (emphasis added).. The terms are given the same construction in local government law in this state. See Jordan Chapel Freewill Baptist Church, 334 So.2d at 664 (affirming the lower court’s determination that “conflict” in Article VIII, section 11 of the 1885 Florida Constitution has been construed tó mean "contradictory in the sense of legislative provisions which cannot co-exist.”); see also E.B. Elliott Adver. Co. v. Metro. Dade Cnty., 425 F.2d 1141, 1150 (5th Cir.1970) ("The word 'inconsistent’" means contradictory in the sense of legislative provisions which cannot co-exist and the same should be true of the word ‘conflict’ in [section] 11(5) [of Article VIII of the 1885 Florida Constitution].”).