ROTHENBERG, J.
(dissenting).
Because the City of Miami’s ordinance is preempted by and in conflict with state law, it is unconstitutional. I, therefore, dissent from the majority opinion uphold-' ing the ordinance.
I agree that this case is governed by Article VIII, section 11 of the 1885 Florida Constitution, as amended in 1968, which authorized the creation of a metropolitan government for Dade County (now Miami-Dade County) and granted ' the' county electors the power to adopt a home rule charter. Article VIII,. section ll(l)(b) of the 1885 Florida Constitution authorized the charter to grant the Board of County Commissioners of Dade County the power to pass ordinances relating to the affairs, property, and government of Dade County and to provide appropriate penalties for violation of its ordinances.
This grant of power to the Board of County Commissioners, however, does not “limit or restrict the power of the Legislature to enact general laws which relate to Dade County ... or any municipality in Dade County ... relating to county or municipal .affairs_” Art. VIII, § 11(6). Article VIII, section 11(6) further provides that, the general laws enacted by the Florida Legislature “shall supersede any part or portion of the home rule charter ... in conflict therewith and shall supersede any provision of any ordinance enacted pursuant to said charter and in conflict there-with_” Id. Thus, section 11(6) preserves the Legislature’s right to enact laws applicable to Miami-Dade County and the municipalities within Miami-Dade County and limits the power of Miami-Dade County and its municipalities to enact charters or laws that are not in conflict with general (statutory) law. See also Article VIII, § 1(g), Fla. Const, (providing that under the Florida Constitution, county charters “shall have all powers of local self-government not inconsistent with general law”) (emphasis, added); Article VIII, § 2(b), Fla. Const, (granting municipalities broad powers to conduct municipal government, perform.,municipal functions, and render municipal services “except as otherwise provided by law”) (emphasis added).
In recognition of the powers granted and the limitations placed on local governments by the Florida Constitution, .the Florida Legislature adopted the .Florida Municipal Home. Rule Act in 1973. Sections 166.021(1), (3), and (4), Florida Statutes (1973), prohibit the exercise of municipal powers where expressly prohibited by the constitution, general or special law, or where expressly preempted to state and county government.
(1) As provided in.s. 2(b), Art. VHI of the State Constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render *244 municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law.
[[Image here]]
(3) The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
[[Image here]]
(c) Any subject expressly preempted to state or county government by the constitution or by general law....
(4) The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution. It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited....
§ 166.021, Fla. Stat. (1973) (emphasis added).
The language found in Article VIII, section 2(b) of the Florida Constitution, “except as otherwise provided by law,” has been interpreted as limiting municipal power where: (1) state law expressly preempts the action, or (2) there exists a direct conflict between the local ordinance and a state statute. Tallahassee Mem’l Reg’l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826, 831 (Fla. 1st DCA 1996); see also Sarasota Alliance For Fair Elections, Inc. v. Browning, 28 So.3d 880, 886 (Fla.2010) (holding that “[a] local government enactment may be inconsistent with state law if (1) the Legislature has preempted a particular subject area or (2) the local enactment conflicts with a state statute”) (internal quotations omitted). Because the City of Miami’s ordinance is expressly preempted by Florida law and is in direct conflict with Florida statutes, the ordinance is unconstitutional.
ANALYSIS
A. The City of Miami’s Ordinance
In 2002, the' City of Miami passed an ordinance creating a civilian investigative panel (“the CIP”) to “[cjonduct investigations, inquiries and public hearings to make factual determinations, facilitate resolutions and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn officer of the city police department!).]” Miami, Fla., Code Art. II, § 11.5-27(5).
Specifically, article II, section 11.5-27 of the City of Miami’s Code provides:
The purpose, powers and duties of the CIP are to:
(1) Act as independent civilian oversight of the sworn police' department;
(2) Exercise its powers so as to not interfere with any ongoing investigations and conduct its activities consistent with applicable law ...;
[[Image here]]
(5) Conduct investigations, inquiries and public hearings to make factual determinations, facilitate resolution and propose recommendations to the city manager and police chief regarding allegations of misconduct by any sworn officer of the city police department;
(6) Request issuance of subpoenas ... for the purpose of obtaining evidence from witnesses and production of books, papers, and other evidence....
[[Image here]]
*245 (8) Issue reports to the mayor, city commission, city attorney, city manager, chief of police and the public;
(9) Make recommendations as to the disposition of alleged incidents of police misconduct, to which the police chief is required to respond within 30 days[.]
The City of Miami’s code further provides that “[pjolicies and procedures shall be established to ensure compliance with Chapters 112 and 119 of the Florida Statutes Miami, Fla., Code Art. II, § 11.5-33(e). As will be discussed in detail below, the City of Miami’s ordinance is expressly preempted by, and is in direct conflict with, Chapter 112.

B. Chapter 112, Part VI, Law Enforcement Officers’ and Correctional Officers’ Bill of Rights

Chapter 112, Part VI, governs the rights of law enforcement officers 'while under investigation. Section 112.531(1) defines a “law enforcement officer” as:
[A]ny person, other than a chief of police, who is employed full time by any municipality or the state or any political subdivision thereof and whose primary responsibility is the prevention and detection of crime or ’the enforcement of the penal, traffic, or highway laws of this state; and includes any person who is appointed by the sheriff as a deputy sheriff pursuant to s. 30.07.
Lt. D’Agastino, the appellant,' who was subpoenaed to appear before the CIP to answer questions and provide testimony to the CIP Committee regarding a civilian complaint alleging he committed misconduct during a traffic stop, is, without' dispute, a law enforcement officer under section 112.531(1). Lt. D’Agastino, therefore, is entitled to all of the safeguards and protections set forth in Chapter 112, Part VI, and specifically sections 112.532 and 112.533⅛ commonly referred to as the Law Enforcement Officers’ Bill of Rights.
Section 112.532 identifies the rights granted to law enforcement and correctional, officers while under investigation, and begins with the following preamble. “All law enforcement officers and correctional officers employed by or appointed to a law enforcement agency or a correctional agency shall have the following rights and privileges!)]” (emphasis added). Subsection (1) identifies .the rights of law enforcement and correctional officers while under investigation; subsection (2) addresses .who shall serve on complaint boards;, subsection (3) provides a remedy for law enforcement and correctional officers who are knowingly falsely accused; subsection (4) specifies the notice requirements; subsection (5) protects law enforcement and correctional officers from retaliation for exercising their rights; and subsection (6) provides a 180-day time limitation to complete an investigation.
The rights specifically prodded in section 112.532(1) are as follows:
(1) RIGHTS OF LAW ENFORCEMENT OFFICERS AND CORRECTIONAL OFFICERS WHILE UNDER INVESTIGATION, — Whenever a law enforcement officer or correctional officer is under investigation and subject to interrogation by members of his or her agency for any. reason that could lead to disciplinary action, suspension, demotion, or dismissal, the interrogation must be conducted under the following conditions:
(a) The interrogation shall be conducted at a reasonable hour, preferably at a time when the law enforcement officer or correctional officer is on duty, unless the seriousness of the investigation is of such a degree that immediate action is required.
*246 . (b) The interrogation shall take place either at the office of the command of the investigating officer or at the office of the local precinct, police unit, or correctional unit in which the incident allegedly occurred, as designated by thé investigating officer or agency.
(c)'The law enforcement officer or correctional officer under investigation shall be informed of the rank, name, and command of the officer in charge of the investigation, the interrogating officer, and all persons present during the interrogation. All questions1 directed to the officer undér interrogation shall be asked by or through one interrogator during any one' investigative interrogation, unless specifically waived by the officer under investigation.
(d) The law enforcement officer or correctional officer under investigation must be informed of the nature of the investigation before any interrogation begins, and he or she must be informed of the names of all complainants.1 All identifiable witnesses shall be interviewed, whenever possible, prior to the beginning of the investigative interview of the accused officer. ‘ The complaint, all witness statements, including all other existing subject officer statements, and all other éxisting evidence, including, but not limited to, incident reports, GPS locator information, and audio or video recordings relating to the incident under investigation, must be provided to each officer who is the subject of the complaint before the beginning of any investigative interview of that officer. An officer, after being informed of the right to review witness statements, may voluntarily waive the provisions of this paragraph .and provide a voluntary statement at any time.
(e) Interrogating sessions shall be for reasonable periods and shall be timed to allow for such personal necessities and rest periods as are reasonably necessary.
(f)The law enforcement officer or correctional officer under interrogation may not be subjected to offensive language or be threatened with transfer, dismissal, or disciplinary action. A promise or reward may not be made as an inducement to answer any questions.
. (g) The formal interrogation of a law enforcement ..officer or correctional officer, including all recess periods, must be recorded on audio tape, or otherwise preserved in such a manner as to allow a transcript to be prepared, and there shall be no unrecorded questions or statements. Upon the request of the interrogated officer, a copy, of any recording of the interrogation session must be made available to the interrogated officer no later than 72 hours, excluding holidays, and weekends, following said interrogation,
(h) If the law enforcement officer or correctional officer under interrogation is under, arrest, or is likely to be placed under arrest as a result of the interrogation, he or she shall be completely informed of all his or her rights before commencing the interrogation.
(i) At the request of any law enforcement officer or correctional officer under investigation, he or she has the right to be represented by counsel or any other representative of his or her choice, who shall be present at all times during the interrogation whenever the interrogation relates to the officer’s continued fitness for law enforcement or correctional service.
(j) Notwithstanding the rights and privileges provided by this part, this part does not limit the right of an agency to discipline or to. pursue criminal charges against an officer.
*247 •Both sides agree that the rights granted to law enforcement officers and correctional officers .under section 112.532, only apply when the officer’s employing agency is conducting an investigation. Thus, , the Law Enforcement Officers’ and Correctional Officers’ Bill of Rights and the protections it provides to law enforcement officers does not protect them when they are being investigated and, questioned by theCIP.
C. The City of Miami’s ordinance is expressly preempted by, Florida Statute
Section 112.533, enacted in 1974, was amended in 2003 to add the following bold-ed language: •
(l)(a) Every' law ■ enforcement agency and correctional agency shall establish and put into operation a -system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be- the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action 1 or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary.
§ 112.533(l)(a), Fla. Stat. (2003) (emphasis added).
The use of the word “the” before “procedure” is significant. As stated by the Attorney General:
“The” is a definite article generally used before nouns with a specifying or particularizing effect and as opposed to the generalizing effect of the indefinite article “a” or “an” and, depending on the context, generally is -used to mean but one.
Op. Att’y Gen. Fla. 259 (1981), see also Work v. United States ex rel. McAlester-Edwards Coal Co., 262 U.S. 200, 208, 43 S.Ct. 580, 67 L.Ed. 949 (1923).
It is also noteworthy that the 2003 amendment provided an express statutory exception- authorizing investigation by the Criminal Justice Standards and-Training Commission. § 112.533(l)(a), Fla. Stat. (2003). It did not, however, provide an exception authorizing citizen review panels to conduct such investigations. .
In 2007,' section 112.533 was further amended to require that:
(l)(b)l. Any political subdivision that initiates or receives a complaint against a law enforcement officer or correctional officer must Within 5 business days forward the complaint to the employing agency of the officer who is the subject of the complaint for review or investigation.
2. ' For purposes of this paragraph, the term “political subdivision” means a separate agency or unit of local government created or established by law or ordinance and the officers thereof and includes, but is not limited to, an authority, board, branch, bureau, city, commission, consolidated government, county, department, district, institution,-metropolitan government, -municipality, office, officer, public corporation, town, or village.
§ 112.533(l)(b), Fla. Stat. (2007) (emphasis added).
There is nothing ambiguous about these amendments. As the Fifth District Court of Appeal found in Demings v. Orange County Citizens Review Board, 15 So.3d 604, 608-09 (Fla. 5th DCA 2009), the statute as amended
conveys a clear and definite directive that when a complaint is registered against -a law enforcement officer, the employing agency is the only local governmental entity authorized to investigate. that complaint. This is clear *248 from: (1) the title language of chapter 2003-149, designating the investigation required by chapter 112 as the “exclusive procedure” for investigation; (2) the language added to section 112.533 in 2003, mandating that the investigation authorized by chapter 112 “shall be the procedure” for investigating complaints against local law enforcement “notwithstanding any other law or ordinance to the contrary;” and (3) the language added to section 112.533 in 2007, directing any local governmental entity that receives or initiates a complaint against a law enforcement officer to forward it to the employing agency for investigation in accordance with chapter 112.
(emphasis added).
Thus, the language in section 112.533, as amended, clearly and unambiguously mandates the procedure that must be followed when investigating a complaint against a law enforcement or correctional officer. Chapter 112 provides certain exceptions from this mandate. It provides an exception for the Criminal Justice Standards and Training Commission. It also authorizes criminal investigations by the State Attorney’s Office, state and federal grand juries, state and federal criminal courts, the Florida Department of Law Enforcement, the Federal Bureau of Investigation, and the United States Department of Justice. See Demings, 15 So.3d at 608 n. 3. Because review by citizen review panels is not excepted, the City of Miami’s ordinance is preempted by Florida law and is therefore unconstitutional.
In 2013, the Florida Supreme Court upheld the Fifth District Court of Appeal’s decision in City of Palm Bay v. Wells Fargo Bank, 114 So.3d 924 (Fla.2013), which struck down a municipal ordinance that was inconsistent with, and in direct conflict with, the general statutory scheme for priority of rights with respect to interests in real property created by the Legislature. The issue was “conflict preemption” and the Florida Supreme Court’s analysis is highly instructive.
The Florida Supreme Court began its analysis by acknowledging that “[i]n Florida, a municipality is given broad authority to enact ordinances under its municipal home rule powers,” City of Palm Bay, 114 So.3d at 928 (quoting City of Hollywood v. Mulligan, 934 So.2d 1238, 1243 (Fla.2006)), and that pursuant to section 166.021 “a municipality may legislate concurrently with the Legislature on any subject which has not been expressly preempted to the State.” Id.
In discussing preemption, the Florida Supreme Court stated the following:
But we have never interpreted either the constitutional or statutory provisions relating to the legislative preemption of municipal home rule powers to require the Legislature specifically state that the exercise of municipal power on a particular subject is precluded. Instead, we have held that “[t]he preemption need not be explicit so long as it is clear that the legislature has clearly preempted local regulation of the subject.” Barragan v. City of Miami, 545 So.2d 252, 254 (Fla.1989). We have also recognized that where concurrent state and municipal regulation is permitted because the state has not preemptively occupied.a regulatory field, “a municipality’s concurrent legislation must not conflict with state law.” Thomas v. State, 614 So.2d 468, 470 (Fla.1993).
The critical phrase of article VIII, section 2(b) — “except as otherwise provided by law” — establishes the constitutional superiority of the Legislature’s power over municipal power. Accordingly, “[mjunicipal ordinances are inferior to laws of the State and must not *249 conflict with any controlling provision of a statute.” Thomas, 614 So.2d at 470. When a municipal “ordinance flies in the-face of state law” — that is, cannot be reconciled with state law — the ordinance “cannot be sustained.” Barragan, 545 So.2d at 255. Such “conflict preemption” comes into play “where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute.” 5 McQuillin Mun. Corp. § 15:16 (3d ed.2012).
[[Image here]]
[T]he Legislature has created a general scheme for priority of rights with respect to interest in real property. Giving effect to the ordinance su-perpriority provision would allow a municipality to displace the policy judgment reflected in the Legislature’s enactment of the statutory provisions. And it would allow the municipality to destroy rights that the Legislature established by state law. A more direct conflict with a statute is hard to imagine. Nothing in the constitutional or statutory provisions relating to municipal home rule or in the Local Government Code Enforcement Boards Act provides any basis for such municipal abrogation of a state statute. The-conflict between the Palm Bay ordinance and state law is a sufficient ground for concluding that the ordinance- super priority provision is invalid.
We categorically reject the City’s argument that the legislative enactment of exceptions to a statutory scheme provides justification for municipalities to enact exceptions to the statutory scheme. No authority supports this argument. The power to create exceptions to a legislative scheme is the power to alter that legislative scheme. “Fundamental to the doctrine of preemption is the understanding that local governments lack the authority to craft their own exceptions to general state laws.” 5 McQuillin Mun. Corp. § 15:18 (3d ed.2012). Although municipalities generally have “the power to enact legislation concerning any subject matter upon which the state legislature may act,” § 166.021(3), Fla. Stat. (2004), in exercising their power within that scope municipalities are precluded from taking any action that conflicts with a state statute. In this context, concurrent power does not mean equal power.
Id. at 928-29. (emphasis added).
The City of Miami’s ordinance does exactly what Florida’s constitution and the Florida Supreme Court in City of Palm Bay forbids. It creates an exception to the statutory scheme provided in Chapter 112, Part VI, which governs the rights of law enforcement officers while under investigation. As previously stated, section 112.533(l)(a) establishes “the” procedure which “shall be the procedure for investigating a complaint against a law enforcement and correctional officer,” and section 112.533(l)(b) requires that any complaint filed against a law enforcement or.correctional officer must be forwarded- to the employing agency of the officer for investigation. , The statute “conveys a clear and definite directive that when a complaint is registered against a law enforcement officer, the employing agency is the only local governmental entity authorized to investigate that' complaint.” Demings, 15 So.3d at 608.
The only exceptions to this statutory scheme have been explicitly provided by the Legislature. The Legislature has provided an exception for the Criminal Justice Standards and Training Commission, see § 112.533(l)(a), and it additionally author *250 izes investigations of law enforcement and correctional officers by the State Attorney’s Office, state and federal grand juries, state and federal courts, the Florida Department of Law Enforcement, the Federal Bureau of Investigation, and the United States Department of Justice. See Demings, 15 So.3d at 608 n. 3. Conspicuously missing from this list are citizen review panels. And as the Florida. Supreme Court stated in City of Palm Bay, “[fundamental to the doctrine of preemption is the understanding that local governments lack the authority to craft their own exceptions to general state laws ... concurrent power does not mean equal power.” City of Palm Bay, 114 So.3d at 929.
D. The City of Miami’s ordinance is also in conñict with Florida law
The City of Miami’s ordinance is not only preempted by state law, it is also in direct conflict with state law. Section 112.533, as amended in 2003 and 2007, specifies that a law enforcement agency’s internal investigation shall be the procedure for investigating law enforcement and correctional officers notwithstanding any other law or ordinance to the contrary. § 112.533(l)(a), Fla. Stat. (2007). In 2007, the statute was also amended to direct all local governmental entities that receive or initiate a complaint against a law enforcement or correctional officer to forward the complaint to the employing agency for investigation in accordance with Chapter 112. § 112.533(l)(b).-
Section 112.533 also adds various other duties by the investigating agency and protections for the law enforcement or correctional officer being investigated. For example, section 112.533(l)(a) dictates that agency personnel- assigned to the investigation must: prepare a report; verify that the contents are true and accurate based on personal knowledge, information, and belief; and include a sworn statement attesting that the rights of the officer under investigation contained in sections 112.532 and 112.533 have been honored. Section 112.533(2)(a) provides that the complaint and investigation must be kept confidential until, the investigation is closed or the agency head provides written notice to the subject officer informing the officer that the investigation has concluded and whether disciplinary charges will be filed. Section 112.533(2) additionally grants the subject officer and/or his attorney broad discovery rights and access, and section 112.533(4) establishes penalties for premature willful disclosure or failure to provide the subject officer with access to the identified discoverable items.
These statutorily mandated obligations of the investigating agency and the rights granted to law enforcement and. correctional officers are not similarly required or granted under the City of Miami’s ordinance, nor are the rights set forth in section 112.532. Specifically, section 112.532(1) requires that: (1) the interrogation take place at the precinct or correctional unit where the incident allegedly occurred, at a reasonable time and preferably while the officer is on duty, § 112.532(l)(a-b); (2) all questions directed to the officer be asked by or through one interrogator during any one investigative interrogation, § 112.532(l)(c); (3) the officer under investigation must be informed of the nature of the investigation, the name of the complainant(s) and witnesses, all witness statements, and other evidence obtained, prior to the interrogation of the subject officer, § 112.532(l)(d); (4) the .interrogation must be recorded and be made available upon request by the subject officer within 72 hours of the interrogation, § 112.532(l)(g); (5) if the subject officer is under arrest or is likely to be placed under arrest as a result of the interrogation, he or she must be informed *251 of his or her, rights, prior to commencement of the interrogation, § 112.532(l)(h); and (6) the subject officer has the right to be represented by counsel and have counsel present during the interrogation, § 112.532(l)(g). The City of Miami Ordinance does not provide these protections.
The following protections are also provided by Chapter 112, Part VI, to law enforcement and correctional officers under investigation and are not required by the City of Miami’s ordinance. Section 112.532(3) grants law enforcement and correctional officers the right to bring a civil suit against any person, group, organization or corporation, or the head of such organization or corporation, for abridgment of the officer’s rights or for filing a complaint which the person or entity knew was false when it was filed. ‘Section 112.532(6) additionally restricts the investigation to a 180-day period.
Because the City of Miami’s ordinance does not include these substantial, material requirements and rights, it is in direct conflict with sections 112.532 and 112.533. Therefore, the.ordinance is unconstitutional. To hold otherwise would render , these statutes meaningless and provide law enforcement and correctional agencies with a mechanism to obtain statements, and other evidence from its officers by non-statutorily created boards that are not required to comply with the statutory mandates contained in Chapter 112. In other words, it would permit law enforcement to use evidence the CIP obtained without affording the subject officer the protection of the Law Enforcement Officers’. Bill of Rights.
In reaching its contrary conclusion, the majority relies on this Court’s opinion in Timoney v. City of Miami Civilian Investigative Panel, 990 So.2d 614 (Fla. 3d DCA 2008), while noting that the majority opinion conflicts with the Fifth District Court of Appeals opinion in Demings. Ti-money, however, did not address the constitutionality of the City of Miami’s ordinance or analyze whether the ordinance conflicts with or is preempted by state statute. This Court in Timoney merely determined, that because Chapter 112 only governs the rights of law enforcement officers under investigation, and the definition of “law enforcement officer” in section 112.531(1) specifically exempts the chief of police from its definition, Chapter 112 did not apply to Chief Timoney and he was therefore subject to the CIP’s investigative subpoena. Timoney is therefore not controlling. Indeed, the majority, does not contend that it is. Conversely, the Fifth District Court of Appeal in Demings did address the constitutionality of a similar county ordinance in Orange County and found that it was in direct conflict with Chapter 112. I wholeheartedly agree with the' Fifth District’s opinion in Dem-ings.
In Demings, Orange. County’s Sheriff, Jerry Demings, and his deputy, Steven Jenny, appealed the trial court’s order upholding the sections of Orange County’s charter and ordinances establishing the Orange County Citizen’s Review Board (“the CRB”), which is similar to the board created by the City of Miami, the CIP, and was created to investigate citizen complaints of excessive force and abuse of power. Demings, 15 So.3d at 605. After analyzing section 112.533, as amended in 2003 and 2007, the Fifth District Court of Appeal concluded it was unambiguous and “[i]t conveys.a clear and definite directive that when a complaint is registered against a law enforcement officer, the employing agency is the only local governmental agency authorized to investigate the. complaint.” . Id. at 608. . The Fifth District thus concluded, that “[bjecause section 112.533 limits the investigation of complaints against law enforcement officers *252 by local government to the employing agency’s investigation, the charter provisions and ordinance that establish an additional procedure for investigating these complaints necessarily and directly conflict with the státute.” Id. at 609 (emphasis added).

CONCLUSION

Because the City of Miami’s ordinance is preempted by state law and it is in direct conflict with sections 112.532 and 112.533, it is unconstitutional. I, therefore, respectfully disagree with the majority opinion upholding the ordinance. Additionally, the majority recognizes, and clearly states, that it “disagrees” with the Fifth District Court of Appeals’ opinion in Demings, but then it refuses to certify conflict without addressing its reason(s) for doing so. Because the majority opinion is in direct conflict with Demings, I also respectfully dissent from the majority’s refusal to certify direct conflict with Demings.