# Supreme Court of Florida

————————

No. SC16-645

————————

**FREDDY D'AGASTINO, et al.,**
Petitioners,

vs.

**THE CITY OF MIAMI, et al.,**
Respondents.

[June 22, 2017]

LEWIS, J.

The many and multiple complexities and conflicts generated in today's society have produced numerous difficulties inherent in the delivery of police work and services. The City of Miami, along with other governmental units, have responded to some of those difficulties inherent in modern police work by creating citizen review and investigative panels. The present case has been generated by the creation of and powers given to a group known as the City of Miami Civilian Investigative Panel (CIP), which is an independent body designed to investigate and review instances of alleged police misconduct, and review police policies and procedures, with the ultimate goal of making recommendations to the relevant law

enforcement agency.  Today we consider a challenge to some of the CIP's authority, in which Lieutenant Freddy D'Agastino and the Fraternal Order of Police seek review of the decision of the Third District Court of Appeal in D'Agastino v. City of Miami, 189 So. 3d 236 (Fla. 3d DCA 2016), on the basis that it expressly and directly conflicts with a decision of the Fifth District Court of Appeal in Demings v. Orange County Citizens Review Board, 15 So. 3d 604 (Fla. 5th DCA 2009), on a question of law.  The policy or wisdom of such investigative panels is not before us.  Specifically, the only question before us involves the operative effect of the Police Officers' Bill of Rights (PBR), codified in sections 112.531-.535, Florida Statutes (2008), and whether those state statutes have any preemptive force with regard to the activities of other review panels.  Due to the conflict of decisions, we have jurisdiction.  See art. V, § 3(b)(3), Fla. Const.

## FACTUAL, LEGAL, AND PROCEDURAL BACKGROUND

On March 5, 2009, a complaint was filed with the CIP against Lt. D'Agastino for alleged misconduct that had occurred the day before during a traffic stop.  The City of Miami Police Department's Internal Affairs Division (Internal Affairs) subsequently fully investigated the matter, interviewing under oath the complainant, Lt. D'Agastino, and two other officers who were present during the traffic stop.  On April 8, 2009, Internal Affairs mailed a letter to the complainant indicating that it had completed its investigation and that its findings

- 2 -

were "inconclusive" as to the alleged misconduct "because insufficient evidence exists to prove or disprove the allegation." Specifically, the Internal Affairs report indicated that there were no independent witnesses to corroborate either conflicting account of the incident that emerged from the sworn interviews conducted by Internal Affairs.

On April 17, 2009, nine days after the letter indicating Internal Affairs had completed its investigation, the CIP issued a subpoena to Lt. D'Agastino ordering him to appear before the CIP to testify. However, on May 22, 2009, Lt. D'Agastino filed an action in the circuit court of the Eleventh Judicial Circuit alleging that the CIP as an investigative authority conflicts with a component of the PBR, section 112.533(1), Florida Statutes. As a result, Lt. D'Agastino requested that the subpoena issued by the CIP be quashed and a protective order entered. Separately, the Fraternal Order of Police had filed a declaratory action also alleging that the CIP was in conflict with section 112.533(1), Florida Statutes. The two cases were consolidated and the trial court ultimately ruled in favor of the City of Miami and the CIP on cross-motions for summary judgment. Lt. D'Agastino then appealed the trial court's decision to the Third District Court of Appeal. The Third District affirmed, entertained a motion for rehearing for three years, but ultimately issued a substituted opinion once again affirming the trial court's order. The Third District's decision was by a vote of two to one. Before we delve into

the details of the legal reasoning at issue, however, it is helpful to understand the

state law and municipal ordinances that are at issue and under consideration here.

**The Police Officers' Bill of Rights**

We begin with the Police Officers' Bill of Rights, codified in Part VI of

Chapter 112 of the Florida Statutes. Most relevant here, section 112.533 is titled

"Receipt and processing of complaints," and provides in pertinent part:

> (1)(a) Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary. When law enforcement or correctional agency personnel assigned the responsibility of investigating the complaint prepare an investigative report or summary, regardless of form, the person preparing the report shall, at the time the report is completed:
>
> 1. Verify pursuant to s. 92.525 that the contents of the report are true and accurate based upon the person's personal knowledge, information, and belief.
>
> 2. Include the following statement, sworn and subscribed to pursuant to s. 92.525:
>
> "I, the undersigned, do hereby swear, under penalty of perjury, that, to the best of my personal knowledge, information, and belief, I have not knowingly or willfully deprived, or allowed another to deprive, the subject of the investigation of any of the rights contained in ss. 112.532 and 112.533, Florida Statutes."
>
> The requirements of subparagraphs 1. and 2. shall be completed prior to the determination as to whether to proceed with disciplinary action

or to file disciplinary charges.  This subsection does not preclude the Criminal Justice Standards and Training Commission from exercising its authority under chapter 943.

(b)1.  Any political subdivision that initiates or receives a complaint against a law enforcement officer or correctional officer must within 5 business days forward the complaint to the employing agency of the officer who is the subject of the complaint for review or investigation.

2.  For purposes of this paragraph, the term "political subdivision" means a separate agency or unit of local government created or established by law or ordinance and the officers thereof and includes, but is not limited to, an authority, board, branch, bureau, city, commission, consolidated government, county, department, district, institution, metropolitan government, municipality, office, officer, public corporation, town, or village.

§ 112.533(1), Fla. Stat. (2008) (emphasis added).[1]

Immediately preceding is section 112.532, titled "Law enforcement officers' and correctional officers' rights."  Section 112.532 introduces several rights afforded to law enforcement officers[2] with the following language, "All law enforcement officers . . . employed by or appointed to a law enforcement agency

_____

1.  Although the complaint was filed in 2009, the decision below analyzed the 2007 Florida Statutes.  There were no amendments to any section of the PBR in 2008, and the 2009 amendments were not effective until July 1, 2009, well after this action was filed on May 22, 2009.  Ch. 2009-200, § 4, at 6, Laws of Fla. ("This act shall take effect July 1, 2009.").

2.  "Law enforcement officer" is defined as "any person, other than a chief of police, who is employed full time by any municipality or the state or any political subdivision thereof and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, traffic, or highway laws of

. . . <u>shall have the following rights and privileges</u>."  § 112.532(1), Fla. Stat.  Those

rights and privileges are enumerated in six subsections and many subparagraphs.

The first set of rights and privileges are those "Rights of Law Enforcement

Officers and Correctional Officers While Under Investigation," enumerated in

subsection 112.532(1):

> Whenever a law enforcement officer or correctional officer is under
> investigation and subject to interrogation by members of his or her
> agency for any reason which could lead to disciplinary action,
> demotion, or dismissal, such interrogation shall be conducted under
> the following conditions:
>
> (a)  The interrogation shall be conducted at a reasonable hour,
> preferably at a time when the law enforcement officer or correctional
> officer is on duty, unless the seriousness of the investigation is of such
> a degree that immediate action is required.
>
> (b)  The interrogation shall take place either at the office of the
> command of the investigating officer or at the office of the local
> precinct, police unit, or correctional unit in which the incident
> allegedly occurred, as designated by the investigating officer or
> agency.
>
> (c)  The law enforcement officer or correctional officer under
> investigation shall be informed of the rank, name, and command of
> the officer in charge of the investigation, the interrogating officer, and
> all persons present during the interrogation.  All questions directed to
> the officer under interrogation shall be asked by or through one
> interrogator during any one investigative interrogation, unless
> specifically waived by the officer under investigation.

---

this state; and includes any person who is appointed by the sheriff as a deputy
sheriff pursuant to s. 30.07."  § 112.531(1), Fla. Stat.

(d)  The law enforcement officer or correctional officer under investigation shall be informed of the nature of the investigation prior to any interrogation, and he or she shall be informed of the names of all complainants.  All identifiable witnesses shall be interviewed, whenever possible, prior to the beginning of the investigative interview of the accused officer.  The complaint and all witness statements shall be provided to the officer who is the subject of the complaint prior to the beginning of any investigative interview of that officer.  An officer, after being informed of the right to review witness statements, may voluntarily waive the provisions of this paragraph and provide a voluntary statement at any time.

(e)  Interrogating sessions shall be for reasonable periods and shall be timed to allow for such personal necessities and rest periods as are reasonably necessary.

(f)  The law enforcement officer or correctional officer under interrogation shall not be subjected to offensive language or be threatened with transfer, dismissal, or disciplinary action.  No promise or reward shall be made as an inducement to answer any questions.

(g)  The formal interrogation of a law enforcement officer or correctional officer, including all recess periods, shall be recorded on audio tape, or otherwise preserved in such a manner as to allow a transcript to be prepared, and there shall be no unrecorded questions or statements.  Upon the request of the interrogated officer, a copy of any such recording of the interrogation session must be made available to the interrogated officer no later than 72 hours, excluding holidays and weekends, following said interrogation.

(h)  If the law enforcement officer or correctional officer under interrogation is under arrest, or is likely to be placed under arrest as a result of the interrogation, he or she shall be completely informed of all his or her rights prior to the commencement of the interrogation.

(i)  At the request of any law enforcement officer or correctional officer under investigation, he or she shall have the right to be represented by counsel or any other representative of his or her choice, who shall be present at all times during such interrogation

whenever the interrogation relates to the officer's continued fitness for law enforcement or correctional service.

(j) Notwithstanding the rights and privileges provided by this part, this part does not limit the right of an agency to discipline or to pursue criminal charges against an officer.

§ 112.532(1)(a)-(j), Fla. Stat.

Section 112.532, subsection (6), titled "Limitations Periods for Disciplinary Actions," provides an elaborate limitations and tolling framework that prohibits "disciplinary action, demotion, or dismissal" if the "investigation is . . . not completed within 180 days after the date the agency receives notice of the allegation." § 112.532(6), Fla. Stat. The subsection enumerates five exceptions that toll the 180-day limitations period.[3] Further, subsection 112.532(6)(b) provides that an investigation may nevertheless be reopened if:

1. Significant new evidence has been discovered that is likely to affect the outcome of the investigation.

2. The evidence could not have reasonably been discovered in the normal course of investigation or the evidence resulted from the predisciplinary response of the officer.

---

[3]. The exceptions are for (1) when the officer waives the limitation period in writing; (2) the pendency of a criminal investigation or prosecution; (3) incapacity of the officer; (4) facilitating multijurisdictional investigations; and (5) when the Governor has declared a state of emergency. § 112.532(6)(a)1.-5., Fla. Stat.

§ 112.532(6)(b)1.-2., Fla. Stat.  However, "[a]ny disciplinary action resulting from an investigation that is reopened pursuant to this paragraph must be completed within 90 days after the date the investigation is reopened."  § 112.532(6)(b), Fla. Stat.[4]

**Relevant City of Miami Charter and Code Provisions**

The CIP's history began with Section 51 of the Miami Charter which authorized the city commission to create a CIP "to act as independent citizens' oversight of the sworn police department."  Miami, Fla., Charter § 51 (2012).  In relevant part, the CIP is authorized to "(1) conduct independent investigations of police misconduct," and "(3) make recommendations to the city manager and/or directly to the police chief, to which a timely written response shall be received within 30 days."  Id.

Directly challenged by Lt. D'Agastino here, the enabling ordinances empower the CIP to execute subpoenas for investigation of allegations of police misconduct:

Sec. 11.5-32. - Subpoena power.

---

4.  Section 112.532 also provides for complaint review boards, a statutory right to bring a civil action for damages arising from false complaints, a prohibition against disciplinary action without first affording an officer notice and an opportunity to respond, and protection from even the threat of retaliation for the exercise of the rights contained in the PBR.  §§ 112.532(2)-(5), Fla. Stat.

(a)  The CIP may subpoena witnesses and documents when conducting an independent investigation of allegations of police misconduct as follows:

     (1)  A request for a subpoena must be presented to and reviewed by the CIP independent counsel;

     (2)  The CIP independent counsel may deny or approve the request after consulting with the state attorney's office;

     (3)  If approved by the CIP independent counsel, the CIP may issue the subpoena with an affirmative vote of seven of its members.

(b)  The subpoena shall be valid only within the jurisdictional limits of the city.  However, the CIP may seek enforcement and extraterritorial domestication of its subpoenas in accordance with general law.

§ 11.5-32, Miami, Fla., Code ch. 11, art. II, § 11.5-32 (2012).  The ordinances also list several procedures to be followed in connection with such subpoenas:

Sec. 11.5-33. - Procedures related to city employees and witnesses.

     (a)  When a city employee appears before the CIP in response to a subpoena, such employee shall be formally advised prior to the commencement of testimony that if the employee has a good-faith belief that the testimony would tend to be self-incriminating, and if, in reliance upon that good-faith belief, the employee declines to answer any question, that the employee's decision not to provide testimony will not subject him or her to any adverse employment consequences. Any employee who, after receiving such advice, decides to testify or provide evidence, must sign a statement acknowledging that the employee understands the advice and is testifying or providing evidence voluntarily and knowingly.

     (b)  A police officer who is the subject of an investigation shall be informed of the nature of the investigation and provided with a copy of the complaint prior to being interrogated.

(c)  A person who appears before the CIP in response to a CIP request for testimony may be represented by counsel or any other representative of his or her choice, which representative may be present at all times during the subject's appearance before the CIP.

(d)  The CIP may hold evidentiary hearings requiring witnesses in the manner set forth in section 11.5-30.  Only the subject of the complaint, witnesses, their attorneys or representatives and CIP members may participate in evidentiary hearings.

(e)  Policies and procedures shall be established to ensure compliance with Chapters 112 and 119 of the Florida Statutes and any other applicable laws.[5]

Id. at § 11.5-33, Miami, Fla., Code.  Also relevant here, a two-way comingling interaction between the CIP and the City of Miami Police Department is prominently featured in the local ordinances.  For one, "the police department shall be notified of complaints received by the CIP within two working days."  § 11.5-31(1)b.  Additionally, "[a]t the conclusion of the internal affairs investigation, the internal affairs report prepared for the Chief of Police shall be transmitted to the CIP within three working days."  Id. at § 11.5-31(2)(b), Miami, Fla., Code. Continuing the two-way comingling interaction, the CIP's ultimate findings and conclusions are forwarded to the Chief who must then respond within thirty days:

At the conclusion of its review or investigation the CIP shall forward its written findings and conclusions to the chief of police and to affected officers and, to the extent permitted by law, to the complainants to which a timely written response shall be received from the chief of police within 30 days.

5.  The record before us does not reveal any such policies or procedures.

- 11 -

§ 11.5-31(5), Miami, Fla., Code.  Furthermore, after reviewing an Internal Affairs report, the code provisions grant the CIP five options, three of which involve interacting directly with the police department:

> 1.  Request that the chief of police conduct further investigation, or
>
> 2.  Obtain further case-specific information from the chief of police, including written materials, audio or video tapes, and related documents, or
>
> 3.  Conduct an independent investigation, such investigation to be concluded within 120 days, or
>
> 4.  Notice and hold a hearing to gather evidence, or
>
> 5.  Report its written findings and conclusions to the city manager and/or the chief of police;

§ 11.5-31(2)(c)1.-5., Miami, Fla., Code.

## Legal Analysis in Decision Below and Relevant Legal Analysis of the Conflict Case

With that background law, the analysis of the decision below can be properly understood.  To begin, the decision below held that the CIP did not conflict in any way with section 112.533(1) because the CIP is independent, external, and cannot directly impose discipline, whereas that particular section and the PBR in general only govern internal investigations by the employing law enforcement agency.  See D'Agastino, 189 So. 3d at 240-42.  The court below reasoned that the CIP acts independently of the police department and is granted

- 12 -

limited power to act in response to its investigations, and may only propose recommendations to the City Manager or Police Chief. See id. at 240. The court was of the view that the CIP does not interfere with any pending or potential criminal investigations or prosecution or with other investigations. See id. at 240-41. The district court also deemed it important that before investigating a complaint, the CIP must consult with its independent counsel who consults with appropriate prosecutorial agencies. See id. at 241. It was also important that the CIP provides a mechanism for other agencies to obtain a stay for purposes of challenging a CIP investigation in a court of competent jurisdiction. See id. The decision below also emphasized that the PBR is limited to investigations conducted by the officer's employing law enforcement agency and makes no reference to external investigations. See id. Ultimately, the district court reasoned that there is no conflict because the CIP lacks authority to make the types of police management decisions addressed in the PBR or to impact the obligations imposed on the police department by the PBR. See id. The court further suggested that Lt. D'Agastino had conceded that there was no express preemption. See id. at 240.

Similarly, the Fifth District in Demings considered whether the Orange County Citizen's Review Board (CRB) had the power to compel deputies of the Orange County Sheriff to appear and testify in CRB investigations by subpoena. 15 So. 3d at 610. However, in conflict with the decision below, the Demings court

did not find that the CRB was reconcilable with section 112.533 because it understood the plain language of section 112.533 to authorize only one local government entity to investigate a complaint of officer misconduct—the officer's employing agency. Id. at 608-10. Specifically, the Demings court considered section 112.533 unambiguous and conveying a clear and definite directive that the employing agency is the only local government entity authorized to investigate a complaint registered against a law enforcement officer. Id. at 608. The Demings court was of the view that amendments enacted in 2003 and 2007 confirmed this reading, primarily due to its addition of language in 2003 mandating that the law enforcement agency investigation amendments "shall be the procedure" for investigating complaints against local law enforcement "notwithstanding any other law or ordinance to the contrary," as well as the language added in 2007 directing local government entities to forward complaints against an officer to the officer's employing agency. Id.[6]

The dissent in the decision below agreed with Demings. See D'Agastino, 189 So. 3d at 247-48 (Rothenberg, J., dissenting). The dissent was of the view that express preemption applied. Id. at 248 (Rothenberg, J., dissenting). In addition to

---

6. In a section titled "Other Problems with the CRB Charter Provision and Implementing Ordinances," the Demings court held alternatively that the CRB was unconstitutional due to the Sheriff's position as a constitutional officer. Demings, 15 So. 3d at 610-11.

- 14 -

the reasoning offered in <u>Demings</u>, the dissent in the decision below concluded that the CIP impermissibly creates an exception to the statutory scheme of the PBR. See <u>id.</u> (Rothenberg, J. dissenting) (citing <u>City of Palm Bay v. Wells Fargo Bank N.A.</u>, 114 So. 3d 924 (Fla. 2013)).  Specifically, the dissent noted that the PBR contains an exception for the Criminal Justice Standards and Training Commission (CJSTC) and authorizes criminal investigations conducted by the State Attorney's Office, state and federal grand juries, state and federal courts, the Florida Department of Law Enforcement, the Federal Bureau of Investigation, and the United States Department of Justice.  <u>Id.</u> at 248 (Rothenberg, J., dissenting).  Thus, noting that citizen review and investigatory panels are conspicuously missing from those exceptions, the dissent concluded they are preempted and unconstitutional. <u>Id.</u> at 250 (Rothenberg, J., dissenting) (citing <u>City of Palm Bay</u>, 114 So. 3d at 929 ("Fundamental to the doctrine of preemption is the understanding that local governments lack the authority to craft their own exceptions to general state laws . . . concurrent power does not mean equal power.")).

We resolve the conflict between <u>Demings</u> and the decision below.

## ANALYSIS

In Florida, the power of a municipal government to legislate is derived from both constitutional provisions and statute.  Generally speaking, the Florida

- 15 -

Constitution authorizes and empowers municipalities to exist and conduct municipal powers except as otherwise provided by law:

> (b) POWERS.  Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.  Each municipal legislative body shall be elective.

Art. VIII, § 2(b), Fla. Const.[7]

Acting on its constitutional authority to address municipal powers, the Legislature clarified the powers of municipal government by enacting the Municipal Home Rule Powers Act, which is now codified in section 166.021 of the Florida Statutes.  Specifically, section 166.021(1) provides in full:

166.021  Powers.--

> (1)  As provided in s. 2(b), Art. VIII of the State Constitution, municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law.

---

7. With regard to municipalities located within Miami-Dade County, there are several other constitutional provisions largely to the same effect from the 1885 Constitution that have been retained and incorporated by reference.  See art. VIII, §6(a), (e), Fla. Const. (1968); art. VIII, § 11, Fla. Const. (1885, as amended 1967).

§ 166.021(1), Fla. Stat. (2008). However, these powers are subject to limitations;

among others, municipalities may not enact legislation concerning subjects

expressly preempted to the state by general law:

> (3) The Legislature recognizes that pursuant to the grant of power set forth in s. 2(b), Art. VIII of the State Constitution, the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except:
>
> (a) The subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution;
>
> (b) Any subject expressly prohibited by the constitution;
>
> (c) Any subject expressly preempted to state or county government by the constitution or by general law; and
>
> (d) Any subject preempted to a county pursuant to a county charter adopted under the authority of ss. 1(g), 3, and 6(e), Art. VIII of the State Constitution.

§ 166.021(3), Fla. Stat. (2008) (emphasis added).

Against this backdrop, in Sarasota Alliance for Fair Elections, Inc. v.

Browning, 28 So. 3d 880, 885-86 (Fla. 2010), we discussed the manner in which a

local government enactment may be inconsistent with state law. Relevant here, a

local government enactment may be inconsistent with state law where the

- 17 -

Legislature has preempted a particular subject area.[8]  Id. at 886 (quoting Lowe v. Broward Cty., 766 So. 2d 1199, 1206-07 (Fla. 4th DCA 2000)).  Florida law recognizes both express preemption and implied preemption.  Id.  On one hand, express preemption requires a specific legislative statement—it cannot be implied or inferred—and the preemption of a field is accomplished by clear language.  Id.  On the other hand, implied preemption occurs when the state legislative scheme is pervasive and the local legislation would present a danger of conflict with that pervasive scheme.  Id.  In other words, preemption is implied when the legislative scheme is so pervasive as to virtually evidence an intent to preempt the particular area or field of operation, and where strong public policy reasons exist for finding such an area or field to be preempted by the Legislature.  Id.  Thus, preemption does not require explicit words so long as it is clear from the language utilized that the Legislature has clearly preempted local regulation of the subject.  Barragan v. City of Miami, 545 So. 2d 252, 254 (Fla. 1989).  The test for implied preemption requires that we look "to the provisions of the whole law, and to its object and policy."  Browning, 28 So. 3d at 886 (citing State v. Harden, 938 So. 2d 480, 486 (Fla. 2006)).  Further, "[t]he nature of the power exerted by the Legislature, the

_____

8. Under Florida law, a separate and distinct way for a local enactment to be inconsistent with state law is where the local enactment conflicts with a state statute.  Browning, 28 So. 3d at 885-86.

- 18 -

object sought to be attained by the statute at issue, and the character of the obligations imposed by the statute are all vital to this determination." Id. (citing Harden, 938 So. 2d at 486).

However, we must be careful and mindful in attempting to impute intent to the Legislature to preclude a local elected governing body from exercising its home rule powers. Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So. 2d 826, 831 (Fla. 1st DCA 1996). Nevertheless, as we reemphasized in City of Palm Bay, because the Legislature is ultimately superior to local government under the Florida Constitution, preemption can arise even where there is no specifically preclusive language. 114 So. 3d at 928 ("But we have never interpreted either the constitutional or statutory provisions relating to the legislative preemption of municipal home rule powers to require that the Legislature specifically state that the exercise of municipal power on a particular subject is precluded."). We further reaffirmed in City of Palm Bay that the language "except as otherwise provided by law" contained in the constitutional provision "establishes the constitutional superiority of the Legislature's power over municipal power." Id.

In sum, under this framework, "[l]egislative statutes are relevant only to determine limitations of authority." City of Boca Raton v. State, 595 So. 2d 25, 28 (Fla. 1992) (quoting State v. City of Sunrise, 354 So. 2d 1206, 1209 (Fla. 1978)).

- 19 -

Finally, we review questions of preemption and the validity of an ordinance de novo.  City of Hollywood v. Mulligan, 934 So. 2d 1238, 1241 (Fla. 2006).

Lt. D'Agastino contends that the PBR expressly preempts the CIP. According to Lt. D'Agastino, the Legislature employed such explicit preemption of the investigation of all complaints against law enforcement officers through the first sentence of section 112.533(1), particularly through the inclusion of the words "Every law enforcement agency . . . shall establish . . . a system," "which shall be the procedure for investigating a complaint," and "notwithstanding any . . . ordinance to the contrary":

> Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary.

§ 112.533(1)(a), Fla. Stat. (emphasis added).

Although one might fairly read that plain language as evincing intent for the exclusivity of investigation of police complaints, it simply does not convey preemption with the sufficient explicit language and clarity of intent that courts have traditionally found necessary to be "express preemption" statutes in the past cases.  The fact remains that a finding of express preemption—that the Legislature has specifically expressed its intent to preempt a subject through an explicit

- 20 -

statement—is a very high threshold to meet.  See Masone v. City of Aventura, 147

So. 3d 492, 495-97 (Fla. 2014) (express preemption found in language "no local

authority shall enact or enforce any ordinance on a matter covered by this chapter

unless expressly authorized" (quoting § 316.007, Fla. Stat. (2008))); see also §

166.044, Fla. Stat. (2002) ("No municipality may adopt any ordinance relating to

the possession or sale of ammunition.").  For example, on the other hand, we have

previously acknowledged that the words "shall utilize" alone in a statute do not

necessarily express preemption.  Mulligan, 934 So. 2d at 1244.  Moreover, as the

CIP contends, one reading of the language "notwithstanding any . . . ordinance to

the contrary" might be interpreted solely to limit a municipality's authority to alter

the procedures of the law enforcement agency pertaining to internal affairs

investigations of complaints rather than preclude the formation of a separate

procedure outside the agency.

Lt. D'Agastino further contends that two other sentences in section

112.533(1) sufficiently evince the requisite explicit intent.  First, Lt. D'Agastino

relies on the language requiring a municipality to forward complaints to an

officer's employing law enforcement agency:

> Any political subdivision that initiates or receives a complaint
> against a law enforcement officer or correctional officer must within 5
> business days forward the complaint to the employing agency of the
> officer who is the subject of the complaint for review or investigation.

- 21 -

§ 112.533(1)(b)1., Fla. Stat.  Second, Lt. D'Agastino refers this Court to the exception carved out in the statute for the CJSTC: "This subsection does not preclude the Criminal Justice Standards and Training Commission from exercising its authority under chapter 943."  § 112.533(1)(a), Fla. Stat.

Lt. D'Agastino's contentions with regard to these two additional provisions are not without some merit and certainly provide some support for his contention that the Legislature, through section 112.533(1), has expressly preempted the investigation of complaints against officers to the officer's employing law enforcement agency.  However, to the extent the provision requiring forwarding of complaints by a political subdivision can be understood as preclusive, it would require an inference as it does not actually contain express language prohibiting other investigations.  Likewise, to find the language with regard to the CJSTC to establish express preemption as to non-law enforcement agencies would also require an inference because the CJSTC is considered a law enforcement agency. See § 943.11(1)(a), Fla. Stat. (2008) ("There is created a Criminal Justice Standards and Training Commission within the Department of Law Enforcement.").  Thus, because Lt. D'Agastino's express preemption claim requires certain inferences, it does not satisfy the test for express preemption.  See Mulligan, 934 So. 2d at 1243 ("Express pre-emption requires a specific statement; the pre-emption cannot be made by implication nor by inference." (internal citation

- 22 -

omitted)); see also Phantom of Clearwater, Inc. v. Pinellas Cty., 894 So. 2d 1011, 1018 (Fla. 2d DCA 2005) ("Express preemption . . . must be accomplished by clear language stating that intent."); Edwards v. State, 422 So. 2d 84, 85 (Fla. 2d DCA 1982) ("An 'express' reference is one which is distinctly stated and not left to inference."). Therefore, although it is a very close question, we cannot hold that section 112.533(1) contains language sufficient to establish express preemption here.

However, as we have explained, Florida law also recognizes implied preemption. Although implied preemption involving a municipality's home rule powers may be disfavored, we must carefully consider the intent of the Legislature with regard to preemptive operation even though it may not be expressly stated. As with his express preemption argument, Lt. D'Agastino contends that the Legislature has intended to preempt the investigation of all complaints against law enforcement officers by requiring that they only be investigated by the employing law enforcement agency. Although we agree with Lt. D'Agastino that section 112.533 evinces an intent to implicitly preempt a field, the field is much more narrow than the expansive reading the officer desires.

The question of implied preemption contained in section 112.533(1) was addressed by the Third District recently in Miami-Dade County v. Dade County Police Benevolent Ass'n, 154 So. 3d 373 (Fla. 3d DCA 2014). There, the specific

issue before the district court was whether section 112.533(1) functioned to implicitly preempt a report from the Miami-Dade Office of Inspector General (OIG) that concerned some members of the Miami-Dade Police Department.  Id. at 375.  As the first part of its analysis, the district court recognized the field to be preempted by the Legislature was that of discipline-related investigations.  Id. at 379-80 ("Here, other than evidencing an intent to leave discipline related investigations to a police officer's employing agency, no other intent is evidenced."); cf. id. at 379 (noting in express preemption analysis that "while section 112.533(1)(a) does require every law enforcement agency to establish a 'system' for receiving, investigating and determining complaints against law enforcement officers and states that this system is to constitute 'the' procedure for investigating complaints against law enforcement officers, it also makes clear that this system is to be used for determining disciplinary action . . . .  In fact, the PBR taken as a whole focuses on an officer's rights during proceedings conducted by his or her employing agency which might lead to discipline." (emphasis in original)); Fraternal Order of Police v. Rutherford, 51 So. 3d 485, 487 (Fla. 1st DCA 2010) ("We conclude that an investigation within the meaning of section 112.532(4)(b) occurs whenever a law enforcement or correctional officer faces possible dismissal, demotion, or suspension without pay . . . .").  We agree with the Third District panel in Dade County Police Benevolent Ass'n that there is a field

related to disciplinary investigations because as that court explained, the field of disciplinary investigations is readily apparent throughout the text of the PBR. See, e.g., § 112.532(1), Fla. Stat. (stating "[w]henever a law enforcement officer . . . is under investigation and subject to interrogation by members of his or her agency for any reason which could lead to disciplinary action, demotion, or dismissal, such interrogation shall be conducted under the following conditions"); § 112.532(4)(a), Fla. Stat. (titled "Notice of Disciplinary Action"); § 112.532(5), Fla. Stat. (providing that no law enforcement officer may be "discharged; disciplined; demoted; denied promotion, transfer, or reassignment" in retaliation for exercising his or her rights under the PBR); § 112.532(6), Fla. Stat. (titled "Limitations Period for Disciplinary Actions"); 112.533(1)(a), Fla. Stat. (stating that after a complaint is received for investigation by "the" procedure established by the PBR, a number of requirements must be met "prior to the determination as to whether to proceed with disciplinary action or to file disciplinary charges"); § 112.533(2)(a)1.-2., Fla. Stat. (providing that complaints filed against law enforcement officers are confidential until either the investigation is concluded with a finding "not to proceed with disciplinary action or to file charges" or concluded with a finding "to proceed with disciplinary action or to file charges"); § 112.535, Fla. Stat. (stating that the PBR "shall not be construed to restrict or otherwise limit the discretion of the sheriff to take any disciplinary action . . . against a deputy sheriff, including the

- 25 -

demotion, reprimand, suspension, or dismissal thereof"). Further, consistent with a preemptive field for disciplinary investigations, the PBR expressly contemplates a distinction between disciplinary and criminal investigations. See § 112.533(2)(c), Fla. Stat. ("Notwithstanding other provisions of this section, the complaint and information shall be available to law enforcement agencies, correctional agencies, and state attorneys in the conduct of a lawful criminal investigation.").

Moreover, the amendment history of section 112.533(1) confirms an increasing effort to funnel complaints that could lead to discipline to the officer's employing agency for investigation and interrogation.[9] Prior to 2003, section 112.533(1) provided in full:

> (1) Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person.

§ 112.533(1), Fla. Stat. (2002). Then, in 2003, the Legislature made the following amendment:

> (1) Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or

---

9. None of the bill analyses from the Legislature concerning the relevant amendments addressed the issue of external investigations.

ordinance to the contrary.  <u>This subsection does not preclude the Criminal Justice Standards and Training Commission from exercising its authority under chapter 943.</u>

Ch. 2003-149, §2, at 3, Laws of Fla.  The preemptive force in this new language is notable when considering that the language "[t]his subsection does not preclude the Criminal Justice Standards and Training Commission from exercising its authority under chapter 943" was added simultaneously with the language "which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary."  <u>Id.</u>

As further indication of its attempt to funnel investigations of misconduct by police to the employing agency, in 2007, the Legislature amended section 112.533(1), requiring political subdivisions and any of their subcomponents to forward complaints they initiate or receive to the employing agency:

>  (1)<u>(a)</u>  Every law enforcement agency and correctional agency shall establish and put into operation a system for the receipt, investigation, and determination of complaints received by such agency from any person, which shall be the procedure for investigating a complaint against a law enforcement and correctional officer and for determining whether to proceed with disciplinary action or to file disciplinary charges, notwithstanding any other law or ordinance to the contrary.  This subsection does not preclude the Criminal Justice Standards and Training Commission from exercising its authority under chapter 943.

(b)1. Any political subdivision that initiates or receives a complaint against a law enforcement officer or correctional officer must within 5 business days forward the complaint to the employing agency of the officer who is the subject of the complaint for review or investigation.

2. For purposes of this subparagraph, the term "political subdivision" means a separate agency or unit of local government created or established by law or ordinance and the officers thereof and includes, but is not limited to, an authority, board, branch, bureau, city, commission, consolidated government, county, department, district, institution, metropolitan government, municipality, office, officer, public corporation, town, or village.

Ch. 2007-110, §2, at 2-3, Laws of Fla.

The CIP would have us end our inquiry here because it embraces the view of the decision below that the CIP lacks any managerial or disciplinary authority because it merely makes recommendations. Thus, the CIP contends that it does not in any way interact with the field preempted by the PBR. We disagree.

A core component of the disciplinary investigations conducted by law enforcement agencies arising from a complaint of alleged misconduct is the ability to interrogate the subject officer. However, law enforcement agencies cannot interrogate an officer by any means but must comply with the elaborate interrogation framework of rights and obligations imposed by the Legislature in the PBR. See § 112.532, Fla. Stat. (2008). Thus, by passing the PBR and devoting an elaborate section of it to regulating these interrogations and conferring many rights upon officers, it is plain that, in part, the objective of the PBR is to protect the

officers to a degree from certain means of interrogation.  See, e.g., § 112.532, Fla. Stat. ("Law enforcement officers' and correctional officers' rights.—All law enforcement officers and correctional officers employed by or appointed to a law enforcement agency or a correctional agency shall have the following rights and privileges") (emphasis added); id. at § 112.532(1) ("RIGHTS OF LAW ENFORCEMENT OFFICERS AND CORRECTIONAL OFFICERS WHILE UNDER INVESTIGATION.—Whenever a law enforcement officer or correctional officer is under investigation and subject to interrogation by members of his or her agency for any reason which could lead to disciplinary action, demotion, or dismissal, such interrogation shall be conducted under the following conditions") (emphasis added); id. at (1)(j) ("Notwithstanding the rights and privileges provided by this part, this part does not limit the right of an agency to discipline or to pursue criminal charges against an officer.") (emphasis added); id. at (5) ("RETALIATION FOR EXERCISING RIGHTS.—No law enforcement officer or correctional officer shall be discharged; disciplined; demoted; denied promotion, transfer, or reassignment; or otherwise discriminated against in regard to his or her employment or appointment, or be threatened with any such treatment, by reason of his or her exercise of the rights granted by this part.") (emphasis added); § 112.533(3), Fla. Stat. ("A law enforcement officer or correctional officer

has the right to review his or her official personnel file at any reasonable time under the supervision of the designated records custodian.") (emphasis added).

As a result, we cannot reconcile the CIP's subpoena power—as it pertains to the officer under investigation—with the PBR. Any holding otherwise would render the rights conferred upon officers by the PBR meaningless because the CIP provides the police department with a mechanism to circumvent the operation of the PBR's protective measures, ultimately rendering the PBR an initial investigatory protection façade. Thus, to uphold the CIP's authority to issue subpoenas to officers in connection with investigations of their conduct would impermissibly countermand the rights conferred by the PBR upon the officer. See City of Miami Beach v. Rocio Corp., 404 So. 2d 1066, 1070 (Fla. 3d DCA 1981) ("An ordinance which supplements a statute's restriction of rights may coexist with that statute . . . whereas an ordinance which countermands rights provided by statute must fail." (citations omitted)). Indeed, the power to issue a subpoena to a citizen and to enforce it with the power of contempt is among the most powerful tools a government may wield. Moreover, if we were to hold otherwise, nothing would preclude the formation of other bodies similar to the CIP by other governmental units with concurrent geographical jurisdiction over an officer, all empowered with subpoena power and potentially subjecting an officer to repeated

governmental pressure over an extended time, rendering the limitations provision in the PBR meaningless.

We therefore hold that the CIP's invocation of its subpoena power as applied to police officers is unconstitutional because compelled interrogation of police officers in investigations that could lead to their discipline is preempted by the PBR. When confronted with an ordinance enacted pursuant to home rule authority that operates in an unconstitutional manner, we have a duty to construe the ordinance in a manner that maintains its constitutionality, if possible. See Rinker Materials Corp. v. City of N. Miami, 286 So. 2d 552, 553 (Fla. 1973) ("Statutes or ordinances should be given that interpretation which renders the ordinance valid and constitutional."). Here, we need not sever the provisions granting the subpoena power to ensure the CIP acts constitutionally. Instead, we find section 11.5-27(2) of the Miami Code of Ordinances is an adequate means of ensuring the subpoena power, as it applies to non-officers, may continue to exist undisturbed: "The purpose, powers, and duties of the CIP are to: . . . (2) Exercise its powers so as to . . . conduct its activities consistent with applicable law, including the Florida Government in the Sunshine Law and with applicable law and labor contracts." By its own ordinance, the CIP has a duty to conduct its activities consistent with the PBR, which, as we hold today, precludes political subdivisions from issuing subpoenas to law enforcement officers in connection with investigations of

- 31 -

complaints against them and precludes these other groups from compelling officers to appear and testify before them.

We therefore quash the decision below to the extent that it affirmed the trial court's order upholding the validity of the subpoena issued to Lt. D'Agastino and denying Lt. D'Agastino a protective order.

While we do not comment on the policy merits of more or less civilian oversight, we do recognize that law enforcement officers remain very much exposed to public scrutiny despite our holding that the subpoena power of the CIP is preempted. Specifically, officers, of course, remain subject to criminal investigations, investigations conducted by their own agency, the State Attorney, the FBI, and the United States Department of Justice. They are also subject to the disciplinary investigations conducted by their own internal affairs department and the CJSTC.

Further, to be clear, our holding today does not address any other functions of the CIP in its mission of acting as an "independent citizens' oversight of the sworn police department." Miami, Fla., Charter, § 51 (2012). For instance, internal affairs investigations become public record once they are complete or are no longer active. § 112.533(2)(a), Fla. Stat. As a result, the CIP has ready access to all of the investigatory materials arising from the investigation conducted by Internal Affairs. Thus, the subsequent review of an investigation of a complaint

against a law enforcement officer, without subpoena power, is not inconsistent with the structure of the PBR.

For this reason, we also approve of the ultimate conclusion of the Third District in Dade County Police Benevolent Ass'n that the Miami-Dade County OIG report was not implicitly preempted by the PBR. 154 So. 3d at 380. Consistent with our holding today, there "[n]o police officers were interviewed or subpoenaed." Id. at 375. Instead, the OIG investigation "for the most part, consisted of an audit of the County's own records, as well as some records from the MDPD, [the private company allegedly giving benefits], and the U.S. Immigration and Customs Enforcement Agency, and a few interviews of State Department and American Airlines employees." Id. This type of reliance on otherwise available information can easily be reconciled with the protections conferred upon police officers in the PBR.

Due to the limited challenges presented, the limited nature of our holding today, and the myriad of functions these varying non-law enforcement agency boards perform, we reemphasize that our holding does not preclude future challenges to other functions that might intrude on the field of disciplining officers, or specific cases, including future matters concerning the CIP. Specifically, our holding today is merely that the PBR preempts the authority of a political subdivision as defined in section 112.533(1)(b) of the Florida Statutes, to compel

- 33 -

an officer to testify in connection with a complaint of misconduct through a subpoena.

## CONCLUSION

We quash the decision below to the extent it affirmed the CIP's authority to issue a subpoena to Lt. D'Agastino.  We remand to the district court for further proceedings not inconsistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.
PARIENTE, J., concurs with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., concurring.

I concur because the majority opinion is narrowly written to find only one portion of the City of Miami Civilian Investigative Panel (CIP) ordinance preempted by the Legislature through the Police Officers' Bill of Rights (PBR) (§§ 112.531-.535, Fla. Stat. (2008)).[10]  Indeed, Justice Lewis, writing for the majority, emphasizes the importance of the Municipal Home Rule Powers Act

---

10.  I also recognize, as does the amicus in support of the City of Miami and its CIP, the importance of the CIP to promote transparency and trust in the justice system, which is an entirely different purpose than the legislative scheme for uniformity in police internal investigations to protect the rights of our law enforcement officers.

(§ 166.021, Fla. Stat. (2008)) and the general rule that legislative preemption should be express.  Majority op. at 16-19; see art. VIII, § 2(b), Fla. Const.  I write separately to reiterate that courts should narrowly approach concluding that a municipal ordinance is unconstitutional based on implied legislative preemption and to urge the Legislature to make its preemptive intent clear.

Unquestionably, article VIII, section 2(b), of the Florida Constitution grants municipalities broad powers to govern "except as otherwise provided by law."  The "law" enacted by the Legislature recognizes the wide latitude granted to municipalities to enact ordinances pursuant to the Home Rule Powers Act and recognizes that the municipality has the power to act except with respect to "[a]ny subject expressly preempted to state or county government by the constitution or by general law."  § 166.021(3)(c), Fla. Stat. (2008) (emphasis added);[11] see majority op. at 16-17.  If the Legislature intended to preempt the entire field of investigation into potential police misconduct, the preferable course—which appears to have been explicitly recognized by the Legislature, through its enactment of the Home Rule Powers Act—is that the Legislature should expressly indicate such intent.

---

11. The current version of this statute is the same.  See § 166.021(3)(c), Fla. Stat. (2016).

As I previously explained, with the Home Rule Powers Act, the Legislature "intended for municipal governments to have the power to enact local legislation on the same subjects and to the same extent as the state government, except in narrow circumstances where the Legislature has preempted a specific area of law to the state or where the local law conflicts with state law." Masone v. City of Aventura, 147 So. 3d 492, 503 (Fla. 2014) (Pariente, J., dissenting). Thus, I adhere to my view that our recent jurisprudence "unnecessarily broadens the Court's interpretation of legislative preemption, while, at the same time, limiting the home rule authority granted to municipal governments by the Florida Constitution." Id. at 499 (Pariente, J., dissenting).

Although the Home Rule Powers Act would appear to require a specific statement by the Legislature indicating its intent to preempt local regulation in a certain field, this Court has determined that preemption also occurs where it is clear that the Legislature has preempted the field or topic through statutes. See majority op. at 18. While express preemption is preferred because it ensures that municipalities have clear direction on any subject matter where they are prohibited from legislating, the Court has also recognized that a municipal ordinance conflicting with the Legislature's clear regulation of a topic or field is prohibited. As this Court unanimously held in 2006:

> In Florida, a municipality is given broad authority to enact ordinances under its municipal home rule powers. Art. VIII, § 2(b),

Fla. Const.; § 166.021(1), (3)(c), (4), Fla. Stat. (1999). Under its broad home rule powers, a municipality may legislate concurrently with the Legislature on any subject which has not been expressly preempted to the State. Wyche v. State, 619 So. 2d 231, 237-38 (Fla. 1993) (citing City of Miami Beach v. Rocio Corp., 404 So. 2d 1066, 1069 (Fla. 3d DCA 1981)); see also Barragan v. City of Miami, 545 So. 2d 252, 254 (Fla. 1989) (stating that the municipal home rule powers act "limits cities from legislating on any subject expressly preempted to state government by general law"). "Preemption essentially takes a topic or a field in which local government might otherwise establish appropriate local laws and reserves that topic for regulation exclusively by the legislature." Phantom of Clearwater, Inc. v. Pinellas County, 894 So. 2d 1011, 1018 (Fla. 2d DCA 2005). "Express pre-emption requires a specific statement; the pre-emption cannot be made by implication nor by inference." Fla. League of Cities, Inc. v. Dep't of Ins. & Treasurer, 540 So. 2d 850, 856 (Fla. 1st DCA 1989) (quoting Bd. of Trs. v. Dulje, 453 So. 2d 177, 178 (Fla. 2d DCA 1984)); see also Phantom of Clearwater, Inc., 894 So. 2d at 1018 ("Express preemption . . . must be accomplished by clear language stating that intent."); Edwards v. State, 422 So. 2d 84, 85 (Fla. 2d DCA 1982) ("An 'express' reference is one which is distinctly stated and not left to inference."). However, "[t]he preemption need not be explicit so long as it is clear that the legislature has clearly preempted local regulation of the subject." Barragan, 545 So. 2d at 254 (citing Tribune Co. v. Cannella, 458 So. 2d 1075 (Fla. 1984)).

City of Hollywood v. Mulligan, 934 So. 2d 1238, 1243 (Fla. 2006) (footnote omitted). Following the standard from Mulligan, the Third District determined that "the PBR does not purport to expressly preempt other investigative bodies or means of oversight" and therefore concluded that the CIP is not preempted by the PBR. D'Agastino v. City of Miami, 189 So. 3d 236, 240, 243 (Fla. 3d DCA 2016).

Despite this Court's long-standing recognition of preemption by implication, it is clear to me that implied preemption should be construed narrowly to comport

with the Home Rule Powers Act and the Florida Constitution. The test "is not whether the Legislature has expressly authorized municipal power, but whether such power has been expressly prohibited." City of Palm Bay v. Wells Fargo Bank, N.A., 114 So. 3d 924, 929-30 (Fla. 2013) (Perry, J., dissenting); see City of Ocala v. Nye, 608 So. 2d 15, 17 (Fla. 1992). Thus, as the majority recognizes, courts should be "careful in imputing an intent on behalf of the Legislature to preclude a local elected governing body from exercising its home rule powers." Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So. 2d 826, 831 (Fla. 1st DCA 1996); see majority op. at 19.

We should primarily rely on the Legislature to express its preemptive intent, when applicable, as it has in various contexts since enacting the Home Rule Powers Act in 1973. See, e.g., § 24.122(3), Fla. Stat. (2016) (preempting matters related to the state lottery); § 320.8249(11) (preempting regulation of mobile home installers and installation); § 386.209 (preempting regulation of smoking). Indeed, after this Court's decision in Masone regarding the use of red light cameras, the Legislature enacted comprehensive legislation that included an express statement of preemption. See § 316.0076 ("Regulation of the use of cameras for enforcing the provisions of this chapter is expressly preempted to the state.").

Therefore, in this case, I agree that "compelled interrogation of police officers in investigations that could lead to their discipline is preempted by the

PBR." Majority op. at 31. However, I continue to urge courts to take an extremely narrow approach before concluding that a municipal ordinance is unconstitutional based on implied legislative preemption, by giving due consideration to the broad grant of authority to municipalities set forth in article VIII, section 2(b), of the Florida Constitution and the extremely narrow exception to Home Rule Powers Act set forth by statute. The best solution would be for the Legislature to include an express statement of preemption when it, in fact, intends to preempt municipal action.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

  Third District - Case No. 3D10-2704

  (Miami-Dade County)

Robert C. Buschel and Eugene G. Gibbons of Buschel Gibbons, P.A., Fort Lauderdale, Florida; and Ronald J. Cohen of Rice Pugatch Robinson Storfer & Cohen PLLC, Fort Lauderdale, Florida,

  for Petitioners

Victoria Méndez, City Attorney, and John A. Greco, Deputy City Attorney, Miami, Florida,

  for Respondent City of Miami

Edward G. Guedes, John J. Quick, and Adam A. Schwartzbaum of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, Florida,

  for Respondent City of Miami Civilian Investigative Panel

G. "Hal" Johnson, General Counsel, Florida Police Benevolent Association, Inc., Tallahassee, Florida; and Robert D. Klausner, Adam P. Levinson, and Paul A. Daragjati of Klausner Kaufman Jensen & Levinson, Plantation, Florida,

    for Amicus Curiae Florida Police Benevolent Association, Inc.

Richard A. Sicking and Mark A. Touby of Touby, Chait & Sicking, P.L., Coral Gables, Florida,

    for Amicus Curiae Florida Professional Firefighters, Inc., International Association of Firefighters, AFL-CIO

Nancy G. Abudu of American Civil Liberties Union Foundation of Florida, Miami, Florida; and Jeanne Baker of Jeanne Baker Attorney at Law, PA, Miami, Florida,

    for Amici Curiae American Civil Liberties Union of Florida, Greater Miami Chapter of American Civil Liberties Union of Florida, Miami-Dade Branch of the National Association for the Advancement of Colored People, and National Association of Civilian Oversight of Law Enforcement