# Supreme Court of Florida

_____

No. SC19-1250
_____

**ROBERT EMERSON, et al.,**
Appellants.

vs.

**HILLSBOROUGH COUNTY, FLORIDA, etc., et al.,**
Appellees.


_____

No. SC19-1343
_____

**STACY WHITE,**
Appellant.

vs.

**HILLSBOROUGH COUNTY, FLORIDA, etc., et al.,**
Appellees.

February 25, 2021

CANADY, C.J.

In these consolidated cases we consider the constitutional validity of an

amendment to the Hillsborough County Charter that was adopted in an initiative

election. Through that charter amendment the voters approved both a

transportation surtax and elaborate directives for allocating the tax proceeds. But the spending directives are unconstitutional in that they conflict with a state law that gives the county commission the authority to allocate such funds. Because it cannot reasonably be said that the voters would have approved the tax without the accompanying spending plan, we must strike the charter amendment in its entirety.

## I. Background

The charter amendment enacted a one percent transportation sales surtax coupled with various provisions governing the distribution and use of the proceeds of the tax. Subsequently, the Hillsborough County Commission entered an interlocal agreement "deem[ing] appropriate" the allocation of funds provided for in the charter amendment. The commission then authorized the issuance of bonds to be funded by a portion of the proceeds of the surtax. We have for review a judgment of the circuit court validating the bonds. *See* art. V, § 3(b)(2), Fla. Const. And we have accepted pass-through jurisdiction—based on the Second District Court of Appeal's certification that the case involved issues of great public importance requiring immediate resolution by this Court—of a judgment of the circuit court in a declaratory judgment action brought by opponents of the charter amendment, which upheld the surtax levy but invalidated portions of the charter amendment governing the use and distribution of surtax proceeds. *See id.* art. V, § 3(b)(5).

-2-

The circuit court based its invalidation of portions of the charter amendment on a conflict between the amendment and section 212.055(1), Florida Statutes (2018), the statute authorizing enactment of the local transportation surtax by referendum, which specifically grants the county commission discretion concerning the application of surtax proceeds within the statutory framework. Although the circuit court invalidated significant portions of the charter amendment related to the allocation and use of tax proceeds, it nonetheless upheld the validity of the surtax and certain other elements of the amendment, reasoning that the surtax and the other provisions it found valid could properly be severed from the invalid portions.

Contending that the trial court erred in its decision to sever the surtax and other provisions of the amendment from those parts of the amendment that it determined to be unconstitutional, the Appellants seek reversal of both trial court judgments. Hillsborough County and Appellees/Cross-Appellants contend that the trial court should have upheld the charter amendment in its entirety, arguing in the alternative that the portions of the amendment severed and upheld by the trial court—most importantly, the surtax levy—should not be disturbed.

We conclude that the charter amendment transgresses the authority reserved to the county commission by the surtax statute and that no portion of the amendment could properly be severed. Therefore, we reverse the declaratory

judgment to the extent that it upholds any portion of the charter amendment, and we reverse the bond validation judgment, which necessarily falls with the invalidation of the surtax.

## II. The Surtax Statute

Section 212.055(1)(a) authorizes charter counties to "levy a discretionary sales surtax, subject to approval by a majority vote of the electorate of the county or by a charter amendment approved by a majority vote of the electorate of the county." The discretionary surtax may be levied at a rate "up to 1 percent," § 212.055(1)(b), and any "proposal to adopt a discretionary sales tax . . . must be approved in a referendum held at a general election," § 212.055(1)(c)1. Of crucial importance to the issues presented in this case is the provision of section 212.055(1)(d) that the "*[p]roceeds from the surtax shall be applied to as many or as few of the uses enumerated*" specifically in the statute "*in whatever combination the county commission deems appropriate.*" (Emphasis added.) A wide range of permitted transportation related uses are set forth in subsections 1 through 4 of section 212.055(1)(d).

The statutory provisions related to the surtax must be viewed against the backdrop of the specific recognition in the Florida Constitution of the Legislature's authority over taxation in the state. Article VII, section 1, subsection (a) of the Florida Constitution provides that "[n]o tax shall be levied except in pursuance of

law," that "[n]o state ad valorem taxes shall be levied on real estate or tangible personal property," and that "[a]ll other forms of taxation shall be preempted to the state except as provided by general law." Moreover, counties shall "be authorized by law to levy ad valorem taxes and may be authorized by law to levy other taxes, . . . except ad valorem taxes on intangible personal property and taxes prohibited by [the] constitution." Art. VII, § 9(a), Fla. Const. So it is clear that the Legislature has plenary authority regarding the surtax.

### III. The Charter Amendment

The "surtax for transportation improvements" amendment to the Hillsborough County Charter at issue here—codified as article 11 of the charter— was adopted in a referendum conducted in the 2018 general election based on a citizens' initiative proposal. *See* Hillsborough County, Fla., Revised Charter art. XI (2018). Article 11 contains a detailed scheme for managing the distribution and use of the proceeds of the one percent sales surtax. *Id.* As stated in article 11's purpose section, the "purpose of the surtax" is identified as funding a variety of categories of "transportation improvements throughout Hillsborough County." *Id.* § 11.01. In connection with this broadly stated purpose, article 11 states that "[t]he proceeds of the surtax shall be distributed and disbursed in compliance with [section 212.055(1), Florida Statutes,] and in accordance with the provisions of . . . article 11." *Id.*

The provision establishing the levy of the surtax specifies that all proceeds of the tax "shall be expended only as permitted by this article 11, [section 212.055(1), Florida Statutes], and in accordance with the purpose set forth" in the amendment. *Id.* § 11.02. The surtax, which had an effective date of January 1, 2019, "shall remain in effect for a period of thirty (30) years." *Id.* § 11.03.

Article 11 contains an elaborate scheme with provisions governing the distribution to various entities of surtax proceeds, provisions governing the use by those entities of the funds distributed, and provisions establishing and empowering an independent oversight commission (IOC). The proceeds of the tax are designated for distribution in three "portions"—the general purpose portion, the transit restricted portion, and the planning and development portion. *See id.* § 11.05. Under the distribution formula, 54% of the tax proceeds—the general purpose portion—are to be "distributed to the [c]ounty and each [m]unicipality in accordance with their relative populations" pursuant to a statutory formula set forth in section 218.62, Florida Statutes (2018), to be expended "in accordance with" article 11. *Id.* § 11.05(1).

The transit restricted portion consists of 45% of the proceeds, which are designated for distribution to the Hillsborough Area Regional Transit Authority (HART) to "be expended by HART in accordance with" article 11. *Id.* § 11.05(2). Finally, one percent of the proceeds are designated for the planning and

development portion, which is to be distributed to "the metropolitan planning organization [MPO] . . . whose jurisdiction includes Hillsborough County," and "shall be expended by the MPO on planning and development purposes" to assist the other entities receiving funds and the IOC "in carrying out the purpose set forth" in the purpose section of article 11. *Id.* § 11.05(3).

Each agency receiving proceeds is required to submit an annual agency "Project Plan" governing its use of proceeds, which must be approved by the IOC. *Id.* § 11.06. Detailed provisions establish the specific transportation-related uses to which the general purpose portion and the transit restricted portion of the proceeds are to be devoted. *See id.* §§ 11.07-11.08. The specific details governing use of the proceeds are of no moment to the issues presented in this case.

The IOC is established to provide "independent oversight of the distribution and expenditure" of the proceeds of the surtax. *Id.* § 11.10. The IOC is given the duty to review an annual audit provided for by article 11 and to "make findings" concerning compliance "with the terms of" article 11, including a determination of whether the proceeds "have been distributed as provided" in the article, and whether the proceeds "have been expended in compliance with applicable state law, [the] Article, and any additional requirements that [a receiving entity] may have lawfully adopted." *Id.* § 11.10(1). In addition, the IOC may, by a two-thirds majority vote, direct the suspension of proceeds (other than any portion of such

proceeds "encumbered by bond indebtedness") if it determines "that an [a]gency has failed to comply with any term or condition of . . . article 11" and the noncompliance remains uncorrected for a specified period. *Id.* § 11.09.

Two additional provisions of article 11 are related to arguments presented in this case. One provision specifically addresses the issue of severability, and the other recognizes the supremacy of state law. The severability provision is as follows:

> To the extent that any mandated expenditure category set forth in [s]ection 11.07 or 11.08 is deemed by a court of competent jurisdiction to be an impermissible use of [s]urtax [p]roceeds, the funds allocated to such impermissible use shall be expended by the applicable [a]gency on any project to improve public transportation permitted by [section 212.055(1), Florida Statutes,] and this Article.

*Id.* § 11.11(2). The provision of article 11 regarding state law supremacy states, "article 11 shall at all times be interpreted in a manner consistent with the laws of Florida, and in the event of any conflict between the provisions of this article 11 and the laws of Florida, the laws of Florida shall prevail." *Id.* § 11.11(3).

The issue of severability is also addressed in a separate provision adopted when the Hillsborough County Charter was initially enacted. That provision states, "It is the intent of the electorate in adopting this Charter that if any section, subsection, sentence, clause, term or word of this Charter is held invalid, the remainder of the Charter shall not be affected." *Id.* § 9.05.

## IV. The Arguments

The opponents of article 11 contend that the circuit court erred in severing the surtax provision and certain other provisions of article 11 from the portions it declared unconstitutional. According to the opponents, the purpose of the surtax was to fund the transportation plan in accordance with the distribution formula and use restrictions. According to the opponents, once crucial elements of the structure established by article 11—including the distribution formula—were recognized to violate the authority of the Hillsborough County Commission to decide how surtax proceeds should be spent, the fundamental design of article 11 was vitiated, and it therefore must be judged unconstitutional in its entirety.

The proponents of article 11 argue that no inconsistency exists between article 11 and the requirements of the surtax statute and that the circuit court therefore erred in declaring any portion of article 11 unconstitutional. They contend that article 11 merely supplements the requirements of the statute rather than contradicting them. To resolve any inconsistency between the charter amendment and the surtax statute, they also rely on provisions of article 11 that refer to compliance with state law as well as the supremacy clause contained in article 11. They argue that these provisions allow any unconstitutional elements to be read out of article 11, leaving the rest of the article undisturbed. And they contend that any such inconsistency is cured by the county commission's approval

of the interlocal agreement deeming the allocation of funds under article 11 to be appropriate. The proponents of article 11 also argue that the challenged provisions of article 11 are justified by a statutory provision that authorizes charter limitations on the broad general legislative powers granted to the county commissions of charter counties.

The proponents of article 11 further contend that even if portions of the measure are unconstitutional, the trial court's severability analysis was correct, and the validity of the surtax and the other portions of article 11 severed and preserved by the circuit court should therefore be upheld. In brief, they contend that severance was appropriate because the primary purpose of article 11 was to provide funding to meet the needs for transportation infrastructure in Hillsborough County and that purpose can be carried out even without the portions of article 11 invalidated by the circuit court. They also contend that the specific severability clause in article 11, as well as the general severability clause in the county charter, require preservation of the tax levy.

## V. The Constitutional Violation

Our constitution provides that "[c]ounties operating under county charters shall have all powers of local self-government not inconsistent with general law" and that "[t]he governing body of a county operating under a charter may enact

county ordinances not inconsistent with general law." Art. VIII, § 1(g), Fla. Const.

As we said in *State v. Sarasota County*, 549 So. 2d 659, 660 (Fla. 1989):

> A charter provision or ordinance of a charter county will be unconstitutional under article VIII, section 1(g) of the Florida Constitution, if it is "inconsistent with general law." We have consistently construed this phrase to mean "contradictory in the sense of legislative provisions which cannot coexist." *Laborers' Int'l Union of North America, Local 478 v. Burroughs*, 541 So. 2d 1160 (Fla. 1989); *State ex. rel. Dade County v. Brautigam*, 224 So. 2d 688, 692 (Fla. 1969).

A local ordinance or charter provision that interferes with the operation of a statute "cannot coexist" with that statute. In brief, the Florida Constitution prohibits any charter county from supplanting or overriding state law through either an ordinance or a charter provision.

Core provisions of article 11 directly clash with the surtax statute's assignment to county commissions of authority to direct the application of surtax revenues to various permitted uses. Under the statute, "[p]roceeds from the surtax shall be applied to as many or as few of the uses enumerated" specifically in the statute "in whatever combination the county commission deems appropriate." § 212.055(1)(d), Fla. Stat. Most saliently, this statutory provision is inconsistent with the provisions in sections 11.05, 11.06, 11.07, 11.08, 11.09 and 11.10 of article 11, which together establish a detailed scheme governing and enforcing the distribution and use of surtax proceeds. These provisions of article 11 "cannot coexist" with section 212.055(1)(d). All these provisions of the article fly in the

-11-

face of the commission's statutory authority.  Because the charter provisions are "inconsistent with general law," they are unconstitutional.  Art. VIII, § 1(g), Fla. Const.

The situation here is not one in which "the county simply chose to legislate in an area where the Legislature chose to remain silent."  *Phantom of Brevard, Inc. v. Brevard Cnty.*, 3 So. 3d 309, 315 (Fla. 2008).  Nor is it a situation in which the charter merely adopted "additional standards . . . without being in conflict with the *minimum* statutory requirements established by the Legislature."  *Sarasota All. for Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 888 (Fla. 2010).  Likewise, this is not a charter amendment that is invalid in a particular application but valid in other applications.  *See D'Agastino v. City of Miami*, 220 So. 3d 410 (Fla. 2017).

The offending charter provisions do not merely supplement or complement the statute.  And they cannot sometimes be validly applied.  If given effect, these provisions of article 11 would supplant the authority of the county commission established by the statute.  And none of our decisions uphold any such displacement by a charter provision of county commission authority specifically conferred by statute.[1]

---

1. *Sarasota All. for Fair Elections, Inc. v. Browning*, 28 So. 3d 880 (Fla. 2010), is not to the contrary.  It appears that a charter provision in question there provided for "voter-imposed restrictions on the Sarasota County Board of Commissioners not permitted by the statute."  *Id*. at 893 (Polston, J., concurring in part and dissenting in part).  But the majority opinion did not address the conflict

-12-

The Legislature could have allowed the proceeds of the surtax to be allocated based on provisions of a charter amendment, just as it allowed the surtax to be adopted by charter amendment. But that is not the choice the Legislature made in the surtax statute. Our constitution does not allow the displacement of the choice the Legislature made in the statute.

Contrary to the contention of the proponents, neither article 11's provision recognizing the supremacy of state law nor its repeated references to compliance with the surtax statute can be flourished like a magic wand to conjure away the conflict between article 11 and the statute. The magic does not work.

It is not reasonable to read article 11 provisions such as section 11.01—which requires that "proceeds of the surtax . . . be distributed and disbursed in compliance with [section 212.055(1), Florida Statutes,] *and* in accordance with the provisions of . . . article 11"—as obliterating provisions of article 11 that compose the greater part of its text. (Emphasis added.) Section 11.01 as well as other similar provisions of article 11 plainly contemplate that the distribution and disbursement of surtax tax revenues "in compliance with" the statute can be accomplished at the same time that distribution and disbursement is made "in accordance with" article 11. There is no hint in this provision that anything in

with county commission authority and in fact concluded that any dispute over the relevant charter provision had been rendered moot by subsequent legislation.

article 11 would be required to yield to a conflicting provision of state law. On the contrary, given the mandate in article 11 to comply with the provisions of *both* the statute and the charter, section 11.01 and other similar provisions must be understood to presume the harmonious operation of the surtax statute and the provisions of article 11 governing the allocation and use of surtax proceeds. Rather than the interpretation advanced by the proponents of article 11, it is most reasonable to understand the references to the surtax statute in section 11.01 and elsewhere in article 11 as designed to ensure that funds only be applied to uses within the scope of the uses enumerated in the statute. *See* § 212.055(1)(d)1.–4., Fla. Stat.

The proponents of article 11 get no more traction with their argument based on the supremacy clause found in section 11.11(3), which provides that article 11 "shall at all times be interpreted in a manner consistent with the laws of Florida" and that "in the event of any conflict" "the laws of Florida shall prevail." To the extent that this provision recognizes that state law prevails over any conflicting provision of article 11, it constitutes nothing more than a meaningless truism. To the extent that the provision establishes a rule of interpretation, it is simply a restatement of the presumption of validity, which requires that ambiguities in a text be resolved in favor of a reasonable reading that avoids a determination of invalidity. *See State v. Fuchs*, 769 So. 2d 1006, 1008 (Fla. 2000) ("It is well

established that, where reasonably possible, a statute will be interpreted in a manner that resolves all doubts in favor of its constitutionality."); *State v. Lick*, 390 So. 2d 52, 53 (Fla. 1980) ("[W]here the statute is reasonably susceptible of two interpretations, one of which would render it invalid and the other valid, we must adopt the constitutional construction."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 66 (2012) ("An interpretation that validates outweighs one that invalidates (*ut res magis valeat quam pereat*)."). This is a rule of *interpretation*—not, as the proponents of article 11 would have it, a rule of *revision*. And as a rule of interpretation, it cannot justify the wholesale excision of the bulk of article 11.

We reject the argument that the Hillsborough County Commission could cure the constitutional infirmity in article 11 by entering the interlocal agreement "deem[ing] appropriate" the allocation of funds mandated by article 11. The attempt by way of the interlocal agreement to ratify and cure an unconstitutional measure is as ineffectual as the unconstitutional measure itself. A county commission cannot legalize a measure that is "inconsistent with general law." To approve such a course of action would be in derogation of the constitutional authority of the Legislature. It would incentivize the manipulation and coercion of the exercise of county commission authority by way of an unconstitutional charter

-15-

provision.  That would make a mockery of the surtax statute.  Notwithstanding the interlocal agreement, the taint of unconstitutionality remains.

We are also unpersuaded by the argument offered by proponents of article 11 based on the statutory provision that authorizes charter limitations on the broad general legislative powers granted to county commissions.  This provision is found in section 125.86, Florida Statutes (2019), a statute establishing general legislative powers of the county commissions in charter counties.  After enumerating a number of powers, the statute provides that the legislative powers of county commissions extend to "[a]ll other powers of local self-government not inconsistent with general law as recognized by the Constitution and laws of the state and which have not been limited by the county charter."  § 125.86(8).  This merely recognizes that a charter provision may limit the exercise by a county commission of unenumerated "powers of local self-government not inconsistent with general law."  But the power of the county commission at issue here—that is, the power to allocate the proceeds of the surtax—does not fall within the scope of such unenumerated "powers of local self-government."  Rather, it is a specific power conferred directly on the county commission, as distinct from the county, in a statute that authorizes the enactment of the surtax—but not the allocation of funds—by charter amendment.  Nothing supports the conclusion that the general provisions of section 125.86 defeat the specific provisions of the surtax statute.

-16-

Article 11's elaborate scheme to control the distribution and use of surtax proceeds cannot be reconciled with the authority granted to the county commission by section 212.055(1)(d). All of the arguments offered to avoid this conclusion are unavailing. The constitutional violation is manifest.

## VI. The Non-Severability of the Tax Levy

We come now to the question of whether the trial court correctly determined that the one percent sales surtax should be severed and preserved. On this point, we conclude that the trial court's conclusion cannot be sustained.

Our Court long ago laid out the basic principles governing severability analysis in the context of unconstitutional statutory provisions:

> The rule is well established that the unconstitutionality of a portion of a statute will not necessarily condemn the entire act. When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.

*Cramp v. Bd. of Pub. Instruction of Orange Cnty.*, 137 So. 2d 828, 830 (Fla. 1962). In brief, "[t]he question is whether the taint of an illegal provision has infected the entire enactment, requiring the whole unit to fail." *Schmitt v. State*, 590 So. 2d 404, 414 (Fla. 1991).

-17-

In employing the *Cramp* factors, we have recognized the cardinal principle of severability analysis: "The severability of a statutory provision is determined by its relation to the *overall legislative intent* of the statute of which it is a part, and whether the statute, less the invalid provisions, can still accomplish this intent." *E. Air Lines, Inc. v. Dep't of Revenue*, 455 So. 2d 311, 317 (Fla. 1984) (emphasis added). In *Ray v. Mortham*, 742 So. 2d 1276, 1283 (Fla. 1999), we applied the *Cramp* severability analysis to a constitutional amendment adopted through the citizen initiative process, concluding that the valid portion of the amendment (term limits for state officials) could be severed from the invalid portion (term limits for federal legislators) because they were "functionally independent." The same framework for determining severability can appropriately be used in this case.

Here, the opponents of article 11 readily meet the "burden . . . placed on the challenging party" to establish that the measure is not severable. *Ray*, 742 So. 2d at 1281. The portions of article 11 that violate the authority of the county commission under the surtax statute are not "functionally independent" from the portion of article 11 imposing the sales surtax. It is clear that a surtax can be applied without provisions like the offending provisions of article 11 and that "an act complete in itself," *Cramp*, 137 So. 2d at 830, would remain after excision of the offending provisions. But it is equally clear that "the legislative purpose expressed in the valid provisions" cannot "be accomplished independently of those

-18-

which are void" and that the valid and invalid elements of article 11 are therefore "so inseparable in substance" that it cannot be said that the voters would have adopted "the one without the other." *Id.*

Article 11 manifests a dual purpose to impose a surtax and to require that the proceeds of the surtax be distributed and used in accordance with the elaborate and detailed scheme established in the article. One element of that dual purpose cannot reasonably be divorced from the other. The unconstitutional provisions of article 11 therefore are not merely ancillary to the surtax but are integral to the overall purpose of the surtax initiative. The tax and the distribution scheme form an interlocking plan. They are functionally dependent. The purpose of the voters in levying a tax that is designed to be distributed and used in a specified manner— with elaborate provisions to implement and enforce that design—is thwarted if the tax is levied but the provisions approved by the voters governing the distribution and use of the tax are set aside. The voters supported taxing with controls on spending the proceeds of the tax. They should not be saddled with the taxing without having the benefit of the controls. Given the functional dependence of the valid and the invalid provisions, the "taint of [the] illegal provision[s] has infected the entire enactment." *Schmitt*, 590 So. 2d at 414. So the whole of article 11 is invalid.

We reject the argument presented by proponents of article 11 based on the severability provisions in section 11.11(2) of article 11 and in section 9.05 of the general provisions of the county charter. Neither provision is applicable to the issue presented here.

It is plain from the terms of section 11.11 that it deals only with defects arising from the "mandated expenditure categor[ies]" in article 11 which result in "an impermissible use of [s]urtax proceeds." It simply provides for funds to be redirected from an impermissible use—as determined by a judicial judgment—to a permissible use. But the problem here cannot be cured by simply allowing receiving entities to redirect funds to permissible uses. Indeed, although labeled as a severability provision, section 11.11 is not structured as a typical severability clause. It does not in any manner address the provisions governing the allocation of proceeds to different entities and the directives regarding the three "portions" of the proceeds. The issue here is not "an impermissible use of surtax proceeds" but an impermissible shift of authority to determine how funds will be allocated to various entities and among permissible uses. Section 11.11 simply has nothing to say about a defect arising from provisions authorizing such a shift in the authority to allocate funds.

Section 9.05 speaks to the "intent of the electorate" at the time the charter—with its many disparate elements—was first adopted. It does not reflect the intent

of the electorate in subsequently adopting the integrated provisions of article 11.

Indeed, the intent of the electorate with respect to the severability of article 11 is expressed by the specific, narrow—and inapposite—terms of section 11.11. Section 9.05 therefore has no bearing on the severability issue here.

## VII. Conclusion

Core provisions of article 11 are inconsistent with the surtax statute. Because those invalid provisions and the remaining provisions of the article form an interlocking plan, article 11 is unconstitutional in its entirety. The bond validation judgment is reversed, and the declaratory judgment is reversed to the extent that it upheld the validity of any portion of article 11.

It is so ordered.

POLSTON, LAWSON, and MUÑIZ, JJ., concur.
LABARGA, J., dissents with an opinion.
COURIEL and GROSSHANS, JJ., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

This Court's jurisprudence on bond validation has properly established a reluctance to overturn the will of the voters in a home rule charter county unless absolutely necessary, and then, only to the extent necessary. *See Phantom of Brevard, Inc. v. Brevard Cnty.*, 3 So. 3d 309, 314 (Fla. 2008); *Telli v. Broward County*, 94 So. 3d 504, 513 (Fla. 2012); *D'Agastino v. City of Miami*, 220 So. 3d

-21-

410, 427 (Fla. 2017). To that end, our precedent has set a high bar for declining severability. *See Ray v. Mortham*, 742 So. 2d 1276, 1281 (Fla. 1999); *see also City of Kissimmee v. Fla. Retail Fed'n, Inc.*, 915 So. 2d 205, 209 (Fla. 5th DCA 2005) (calling on appellate courts to "indulge every reasonable presumption in favor of an ordinance's constitutionality.").

A presumption of constitutionality should be the starting point for this Court's analysis. *Citizens for Responsible Growth v. City of St. Pete Beach*, 940 So. 2d 1144, 1146 (Fla. 2d DCA 2006) (stating that courts must, "if possible, interpret the amendment as constitutional"); *see also Telli*, 94 So. 3d at 513 (recognizing courts cannot infringe on "the ability of counties to govern themselves as that broad authority has been granted to them by home rule power through the Florida Constitution").

Here, as noted by the circuit court, a majority of voters in Hillsborough County expressed their desire to improve their transportation assets at the ballot box by approving this amendment to their charter. The majority, however, concludes that "[c]ore provisions of article 11 are inconsistent with the surtax statute. Because those invalid provisions and the remaining provisions of the article form an interlocking plan, article 11 is unconstitutional in its entirety." Majority op. at 21. The majority reasons that because the valid and invalid elements of article 11 are "so inseparable in substance, it cannot be said that the

-22-

voters would have adopted 'the one without the other.' " Majority op. at 19. I disagree.

The amendment presented to the voters, despite the invalidation of significant portions of its provisions, still adequately defined its primary purpose: to provide funding for transportation infrastructure. A majority of voters in Hillsborough County understood it as such and expressed their desire to support it.

In addition, the majority's focus of casting doubt on whether article 11 would have passed without the stricken provisions is a test more akin to what this Court rejected in *Ray v. Mortham*. In *Ray*, this Court rejected an argument that the challenger of a citizens-initiated constitutional amendment "need only cast doubt on whether the amendment would have passed" and that unless the sponsor of the amendment "can 'prove' that the voters would have adopted the amendment," it must be stricken. 742 So. 2d at 1281. Concluding that the proffered test "would be an inappropriate burden to place on" the party defending an enactment adopted through the citizens' initiative process, this Court confirmed that the burden should be on the challenger seeking to invalidate the popular will of the voters. *Id*. The majority's analysis therefore goes against "the purpose underlying severability—to preserve the constitutionality of enactments where it is possible to do so." *Id*.

Given our jurisprudence to "indulge every reasonable presumption in favor of an ordinance's constitutionality," *City of Kissimmee*, 915 So. 2d at 209, and the high bar we have set for declining severability, I respectfully dissent.

An Appeal from the Circuit Court in and for Hillsborough County – Bond Validations
    Rex Martin Barbas, Judge - Case No. 292019CA001382A001HC

And Certified Judgments of Trial Courts in and for Hillsborough County –
    Rex Martin Barbas, Judge - Case No. 292019CA001382A001HC – An Appeal from the District Court of Appeal – Second District, Case No. 2D19-2740

Howard C. Coker and Chelsea R. Harris of Coker Law, Jacksonville, Florida; and Derek T. Ho and Collin R. White of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., Washington, District of Columbia,

    for Appellant Robert Emerson

Chris W. Altenbernd of Banker Lopez Gassler P.A., Tampa, Florida,

    for Appellant Stacy White

Raoul G. Cantero, David P. Draigh, W. Dylan Fay, and Zachary Dickens of White & Case LLP, Miami, Florida; and Benjamin H. Hill, Robert A. Shimberg, and J. Logan Murphy of Hill Ward & Henderson, P.A., Tampa, Florida,

    for Appellees Tyler Hudson, Keep Hillsborough Moving, Inc., and All for Transportation

Alan S. Zimmet, Nikki C. Day, and Elizabeth W. Neiberger of Bryant Miller Olive, P.A., Tampa, Florida; George S. LeMieux, Kenneth B. Bell, and Lauren Vickroy Purdy of Gunster, Yoakley & Stewart, P.A., Fort Lauderdale, Florida; and David Harvey, Office of the City Attorney, Tampa, Florida,

    for Appellees Hillsborough County, Hillsborough County Metropolitan Planning Organization, and City of Tampa

Harry M. Cohen, Legal Counsel, Hillsborough County Clerk of the Circuit Court, Tampa, Florida,

for Appellee Hillsborough County Clerk of the Circuit Court

Kenneth W. Buchman, City Attorney, Plant City, Florida,

for Appellee City of Plant City

David L. Smith, Robert E. Johnson, and Julia C. Mandell of GrayRobinson, P.A., Tampa, Florida, and Kristie Hatcher-Bolin of GrayRobinson, P.A., Lakeland, Florida,

for Appellee Hillsborough Transit Authority

Andrew H. Warren, State Attorney, and Ada Carmona, Assistant State Attorney, Thirteenth Judicial Circuit, Tampa, Florida,

for Appellee State of Florida

Daniel J. Woodring of the Woodring Law Firm, Tallahassee, Florida,

for Amicus Curiae Associated Industries of Florida

Daniel Bell, General Counsel, and W. Jordan Jones, Staff Attorney, House Judiciary Committee, Tallahassee, Florida; and Jeremiah Hawkes, General Counsel, and Ashley Istler, Deputy General Counsel, The Florida Senate, Tallahassee, Florida,

for Amici Curiae Florida House of Representatives and Florida Senate

Diane G. DeWolf and Katherine E. Giddings of Akerman LLP, Tallahassee, Florida, and Marilyn Mullen Healy of Akerman LLP, Tampa, Florida,

for Amici Curiae the Greater Tampa Chamber of Commerce, the Tampa Bay Partnership, and the Tampa Hillsborough Economic Development Corporation